[Civ. No. 20999. Second Dist., Div. Three. Sept. 29, 1955.]

LOS ANGELES CITY HIGH SCHOOL DISTRICT OF LOS ANGELES COUNTY, Respondent, v. CARLA M. RODRIGUEZ, Appellant.

Peter T. Rice for Appellant.

Harold W. Kennedy, County Counsel, Lloyd S. Davis, Richard A. Del Guercio and Milnor E. Gleaves, Deputy County Counsel, for Respondent.

SHINN, P. J.—The Los Angeles City High School District of Los Angeles brought suit to condemn two parcels of property, one of which was owned by Carla M. Rodriguez, then known as Carla M. Tweedy. Mrs. Rodriguez answered the complaint, alleging her property to be of the value of $47,285. The testimony as to values offered by Mrs. Rodriguez was that of herself and her son-in-law, Ted W. Bernhardt, together with a photograph, a chart, a map, a diagram and certain memoranda. The case was tried to a jury with respect to the value of the property and at the conclusion of the receipt of evidence the court on plaintiff's motion struck out all the testimony introduced on behalf of the defendant and instructed the jury to render a verdict in the amount of $20,850 which was the valuation placed upon the property by plaintiff's expert witness. Verdict was rendered accordingly and judgment of condemnation was entered. Defendant's motion for new trial was denied and she has appealed from the judgment. The sole question on the appeal is whether the court committed error in striking out the testimony of Mrs. Rodriguez and that of Mr. Bernhardt. The grounds of plaintiff's motions were that Mrs. Rodriguez did not state an opinion as to market value and Mr. Bernhardt was incompetent to express an opinion as to the market value of the property. It is clear to us that the rulings were erroneous.

The property consisted of some 2½ acres with residential improvements, namely, a house, garage, laundry and other improvements consisting of a variety of fruit trees, Concord grape vines, shrubs, etc. Mrs. Rodriguez was a school teacher. She had lived on the property for about 27 years; except for the past four years she and her family have farmed the property, raising vegetable crops, domestic animals for their use and maintaining a small apiary. The case had been tried before and a new trial had been granted when Mrs. Rodriguez refused to accept an amount considerably below the amount awarded her by the jury. She had testified in the former trial. Her examination and cross-examination as a witness in the second trial disclosed that she was a woman of high intelligence, thoroughly acquainted with real estate conditions in the San Fernando Valley, where the property was located, and especially the progress of development that had taken place and was taking place which would affect the value of her property. She expressed the opinion that the market value of her property at the time of condemnation was

$40,990, and that it was valuable for two special purposes, namely, for its agricultural use and also its potential value for subdivision purposes. Throughout a long and highly technical cross-examination it was developed that Mrs. Rodriguez thought the property had some speculative value as prospective oil land, it previously having been leased for that purpose. She made it clear nevertheless that in stating her opinion of $40,990 as the market value of the property, she attributed no part of it to the oil potential. When pressed further on cross-examination she expressed the opinion that with oil prospects included the property would be worth $50,000. In cross-examination she was led into saying that $40,990 was what she considered the property to be worth to her and upon the assumption that that was the sole basis for her estimate of value plaintiff made a motion to strike out her testimony upon the ground that her opinion was based upon a false basis of value. Thereafter followed extended further questioning of the witness. Upon more than one occasion Mrs. Rodriguez answered questions as to her understanding of market value. She said: "Well, I believe it is from the price set between two people, let us say, a seller who doesn't have to sell and a buyer who wants to buy. Say I am the person who has the property to sell, I don't have to sell it, and a person comes to me and wants to buy, it would be a price set by me as that person who doesn't have to sell. That, to my mind, is market value." Even after that the court ruled that while the definition of market value which she gave was close, that "it was not close enough" and that her testimony was worthless. Upon further interrogation Mrs. Rodriguez testified that there was a difference between the value of the property to her "personally" and what the market value would be; that the worth of the property to her could not be estimated in dollars and cents but that the figure she gave of $40,990 was the market value. And she testified that she based her valuation in part upon "asking price on other properties, known sales that have taken place in the last few years." Again in reply to a question of the court she defined market value as follows: "Well, market value is the price set between two, to my opinion, two people who want to consummate a sale, and as I understand it, it would be between a person who doesn't have to sell and a person who wishes to buy. Now, that is my opinion of the market value, with all due regard to recent sales and reasonable value placed on surrounding prop-

erty.'' The court thereupon reversed its ruling and held that the testimony of Mrs. Rodriguez should stand. Then counsel for plaintiff, undaunted by the ruling of the court, argued the matter further, whereupon the court said ''She comes about as close as an average layman to market value, and I think there is some fallacy in these cases as to letting an owner testify as to what the value is, but the law is that they may, and I think I am stretching it a little, being a little technical with it.'' In answer to a question by the court whether she would be willing to sell she stated she would not want to sell at any price. Upon the insistence of plaintiff's counsel the court finally reversed its latest ruling, struck out the testimony of Mrs. Rodriguez on the ground that it was of no value whatever and instructed the jury to disregard it. Counsel for the county are hard put to justify this ruling. They say that Mrs. Rodriguez stated that $40,990 was the price she would put on her property as what it was worth to her if someone came to her door offering to buy it; but she also testified that $40,990 which she would ask, were she willing to sell, would also be the market value of the property; that if she was anxious to sell she might ask less and if she was unwilling to sell she might ask more. She also testified that there was a difference between market value and the value which she considered the property would have to her for the use of herself and family.

After the court's ruling as above outlined, defense counsel asked numerous questions for the purpose of clarifying the testimony of the witness and removing any uncertainty as to the basis of the valuation which she had placed upon the property. All these questions were objected to and the objections were sustained. Thereafter defendant's counsel made an offer to prove by the witness that she had not given $40,990 as the value which she considered the property would have to herself and family but that it was the price which she would ask and would expect to receive as the market value. An objection to the offer was sustained.

Plaintiff attempts to sustain the ruling striking out the testimony of Mrs. Rodriguez by selecting isolated statements which it is claimed show that she based her estimate of value entirely upon what she considered the property would be worth to her and disregarding all the remainder of her testimony. All that can be claimed in support of the ruling is that in reply to suggestive questions she stated that the price of $40,990 which she would ask was what she con-

sidered the property to be worth to her, but those statements were inseparable from her repeated statements that she would consider that price to be the market value or a fair price to be paid for the property provided she was willing to sell but did not have to sell. If she was anxious to sell she might ask less; if she was unwilling to sell she might ask more. The questioning of Mrs. Rodriguez on cross-examination was captious; the objections to her testimony were hypercritical. One cannot read her entire testimony without becoming convinced that she was well informed as to market values, that her opinion had a sound legal basis and that it should have gone to the jury for their consideration.

■ The right of an owner to testify as to the value of his property is so well established as to call for but a token citation of authority. Mr. Jahr in his work on Law of Eminent Domain, Valuation and Procedure (1953), page 205, section 133, says that he is aware of but two states, New Jersey and Rhode Island, in which the testimony of an owner is not received. (*Spring Valley W. W.* v. *Drinkhouse,* 92 Cal. 528 [28 P. 681]; *Long Beach City H. S. Dist.* v. *Stewart,* 30 Cal.2d 763, 772 [185 P.2d 585, 173 A.L.R. 249]; *People* v. *La Macchia,* 41 Cal.2d 738, 746 [264 P.2d 15].)

Plaintiff contends that the ruling as to Mrs. Rodriguez' testimony was within the discretion of the court and that no abuse of discretion was shown. ■ It is, of course, well established that the court has rather broad discretion in ruling upon the sufficiency of the qualifications of a witness to express an opinion as to value. (*Coast Counties Gas & Elec. Co.* v. *Miller & Lux, Inc.,* 118 Cal.App. 140 [5 P.2d 34]; 19 Cal.Jur.2d, p. 23; 21 Cal.D. 592.) But the discretion of the court is not an arbitrary one and it is not controlling if it clearly appears that the ruling was based upon a patent misconception of the basis of the opinion of the witness or an erroneous application of an established rule of law. It seems clear that the ruling striking out Mrs. Rodriguez' testimony was due primarily to the court's disapproval of the rule which permits an owner to testify as to the value of his property and a reluctance to follow it.

Plaintiff, while recognizing the right of an owner to testify, contends that an estimate of value by an owner, like that of an expert witness, is worthless unless it is an opinion as to market value rather than a value for a specific use. This is a manifestly sound position and it is not questioned by defendant. Plaintiff, however, has clearly failed to show

that the testimony of Mrs. Rodriguez was subject to that infirmity.

Although the ruling striking out the testimony of Mrs. Rodriguez requires that the judgment be reversed, we should also consider the ruling with respect to the testimony of Mr. Bernhardt. He is a son-in-law of Mrs. Rodriguez. He is a carpet layer by trade; he lives in the San Fernando Valley in the vicinity of the Rodriguez property and his business is in that locality; he lives upon 10 acres of farm land, 8 of which he bought in 1936 and 2 in 1940, and he has lived there since 1936. He testified that he had observed sales and purchases in quite a few transactions. He had discussed sales of acreage in the vicinity of the Rodriguez property. He had talked to landowners, discussed land values and market values of land in the area; he had been familiar with the Rodriguez property since 1936 and with the surrounding land. He testified on cross-examination that he was not a broker nor a real estate appraiser. The question was asked whether he had formed an opinion as to the value of the property. Plaintiff objected and the objection was sustained. With permission of the court the witness was questioned further; he testified that he had spoken with other landowners as to their opinions of values, with owners who had sold their lands; he had observed the growth and development in the area. He had seen escrow instructions of sales of other lands in the area. He was shown a map, one of plaintiff's exhibits. In response to a question by the court he defined market value as follows: ''Well, the market value of a piece of property is arrived at by choice of a buyer who doesn't have to buy and a seller who does not have to sell. I believe that is more or less the book reading of it'' and in response to the court's question as to how many pieces of property he had bought and sold in the last 10 years, he indicated that since he got out of the army he had bought two properties which he pointed out on the map. He stated he was personally familiar with the property at the corner of Laurel Canyon and Chamberlain (No. 1 on the map) and a portion of Mr. Fudge's property that was sold (No. 2 on the map) and with a property sold for a drive-in theatre on Laurel Canyon just southeast of Chamberlain (No. 14 on the map) and with property at Sharp and Chamberlain (No. 6 on the map) and property on Chamberlain (No. 20 on the map) and on Chatsworth Drive (No. 35), saying that these properties were owned by his friends and neighbors.

He further testified that Parcel No. 1 was sold during the past year; it contained about six acres and he had talked many times with Mr. Johnson, the seller. He knew the sale of the Fudge property of something less than 12 acres and on *voir dire* examination, testified that the sales price was $5,000 per acre. Questioned by the court whether he had any other subdivision experience, the witness replied: ''I have, in a sense. I paved Chamberlain Street, 800 feet,'' and that he was then in process of putting on a subdivision of his own; that he owned property which would be subdivided, he had investigated the costs of putting on a subdivision and he had made a study of what the subdivision cost of the Rodriguez property would be; he had made a detailed study of the Rodriguez property for subdivision purposes. Questioned by the court as to what he considered to be the highest and best use for the property, he replied: ''One would be a farm, the other would be a subdivision,'' and in answering the question of the court he stated that the most practical use would be for a subdivision. ██ Plaintiff again objected to a question whether witness had an opinion as to the value of the land and the objection was sustained. We think it was error to sustain the objection.

██ One does not have to be a so-called expert to be competent to express an opinion as to the value of real property, nor is it necessary that he be engaged in business as a broker or as a professional appraiser. ██ The court stated in *City of Stockton* v. *Ellingwood*, 96 Cal.App. 708, 716 [275 P. 228], as follows: ''If a witness, by reason of his skill, learning, or technical training, understands the adaptability of the lands in question for a particular purpose, and the demand for land for such purpose, he may state the market value of the land, although he may be entirely unacquainted with the other elements which would be considered by different buyers competing for the same property. On the other hand, if the witness has knowledge of the market value of the lands, even though he possesses no technical skill, training, or ability, he may state the market value. The different elements considered by the witnesses in giving their opinions as to market value may be inquired into upon cross-examination, and if, upon such cross-examination, it appears to the court that the witness' testimony is based upon improper consideration, or upon what is usually termed as speculative only, it should be stricken from the record or withdrawn from the consideration of the court or the jury.'' All the authori-

ties agree with this statement of the rule. Mr. Jahr, *supra,* page 204, section 133, says: "It is sufficient that they (the witnesses) possess a fair knowledge of the property acquired and know the values for which similar properties in the immediate vicinity were sold in the market." (See Wigmore on Evidence, 3d ed., vol. III, p. 43, § 714; Nichols on Eminent Domain, vol. V, § 18.4 (1, 4), p. 137 et seq.; Orgel on Valuation under Eminent Domain, vol. 1, 2d ed., § 132, p. 565.) ██ It is sufficient that the witness has some peculiar means of forming an intelligent judgment as to values beyond that which is presumed to be possessed by men generally (*People* v. *Marblehead Land Co.,* 82 Cal.App. 289, 302 [255 P. 553]). ██ Owners of land in the vicinity, familiar with the property in question are competent witnesses (*People* v. *Willis,* 30 Cal.App.2d 419 [86 P.2d 670]; *Remmers* v. *Ciciliot,* 70 Cal.App.2d 432, 437-438 [161 P.2d 257]). Owners of land in the vicinity, familiar with the character of the land in question frequently have a better idea of land values than strangers who are engaged in the business of selling land (*Provo River Water Users' Assn.* v. *Carlson,* 103 Utah 93 [133 P.2d 777]; see anno. 159 A.L.R. 7).

██ The testimony of Mr. Bernhardt was not subject to any of the infirmities for which testimony was stricken in the cases relied upon by plaintiff. Mr. Bernhardt had owned land in the general vicinity for some 20 years. It was land of the same general character as that of Mrs. Rodriguez, that is to say, it was suitable for farming and also for subdivision into residence lots; he was contemplating the subdivision of his own property, had studied the matter of the cost of subdividing and had made the same study with respect to the Rodriguez property; he had been active in familiarizing himself with land values and selling prices, had talked with many owners concerning land values and generally had kept himself informed respecting the same to a degree that gave him a knowledge of values altogether superior to that of other owners in the vicinity who were not contemplating putting their properties on the market and had not the incentive to keep themselves informed as to the development in that section of the valley and the changing market values. Plaintiff has cited us to no case and we know of none in which the testimony of a witness, qualified as Mr. Bernhardt was shown to be, was excluded by the court. Mr. Bernhardt, in our opinion, was shown to be a well qualified witness. If the

testimony of such witnesses as Mrs. Rodriguez and Bernhardt should be excluded as worthless, there would remain as competent witnesses only persons engaged in the business of selling lands in the vicinity and persons denominated as experts, who make a business of furnishing their services in the appraisal of land values. Such a limitation upon the competency of witnesses would be contrary to the rules we have stated, which prevail in California and almost every other jurisdiction.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 23, 1955. Edmonds, J., and Spence, J., were of the opinion that the petition should be granted.