[Sac. No. 6845.   In Bank.   Dec. 31, 1957.]

PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant, v. W. H. HUNT ESTATE COMPANY (a Corporation), Respondent.

566

Robert H. Gerdes, F. H. Pearson, Charles T. Van Deusen, Carr & Kennedy and Malcolm A. MacKillop for Appellant.

Roger Arnebergh, City Attorney (Los Angeles), Gilmore Tillman, Chief Assistant City Attorney for Water and Power, O. M. Lloyd, Deputy City Attorney, E. Kendall Davis and David S. Kaplan as Amici Curiae on behalf of Appellant.

L. C. Smith and Leander W. Pitman for Respondent.

SCHAUER, J.—In this eminent domain proceeding plaintiff appeals from a judgment on a verdict awarding $5,500 as the market value of right-of-way easements for two electric transmission lines and service roads over defendant's land, plus $32,000 as severance damages to the remainder of the land. We have concluded that the various attacks made by plaintiff upon defendant's evidence concerning severance damages—most of which go to the weight rather than admissibility or legal sufficiency of the evidence—are without merit and that the judgment should be affirmed.

Defendant's property comprises approximately 7,612 acres, or about 11.85 square miles, and is located in Shasta County northeast of the town of Millville. Two operating transmission lines, built in 1920 and 1921, cross the easterly portion of the property. The right of way now sought for additional transmission lines will extend 17,382 lineal feet across defendant's land and will contain 52.6 acres. The road easements will be approximately 8,893 feet long and contain 4.01 acres. Spoil deposits will cover about .87 acres in addition. Thus the easements will cover a total of approximately 57.48 acres.

The transmission lines, to carry 220,000 volts, will be supported on steel towers set on four reinforced concrete footings and will be grounded by copper wire driven into the earth under each footing. For approximately 9,335 lineal feet the two lines will be strung on two parallel sets of squat snow towers which are some 20 feet square at the base. For the balance of the way, or approximately 8,047 lineal feet, there will be just one tower row composed of larger towers with bases averaging 28 feet square and so constructed that one can travel between the legs. There will be 26 of the smaller towers, and 10 of the larger. The ground clearance of the wires generally varies from 47 to 57 feet and is never less than 30 feet with maximum sag at 125 degrees Fahrenheit. Plaintiff also will need to construct about 15 new gates in existing fences and have the use of three gates already constructed by defendant. Should defendant construct any fence across an access road or under the lines, plaintiff needs the right to place a gate therein.

The grounding wires which are carried on the transmission towers are for the purpose of diffusing lightning so that the full force of a lightning bolt will not spend itself down one tower but will be spread along the lines and come to ground down several towers, thus protecting the lines.

Plaintiff first contends that the trial court erred to plaintiff's prejudice in refusing to strike testimony of Wilson Pritchett ''regarding alleged danger created by the conductivity of water and aluminum, such testimony being irrelevant to any issue and unrelated to any evidence in the case.'' Pritchett, since 1947 an instructor of electrical engineering at the University of California, testified as an expert. The testimony to which plaintiff objects was offered to establish that it would be dangerous to irrigate with a sprinkler system beneath the proposed power lines. Pritchett stated that ''a stream of water projected upward with sufficient velocity to reach the line but not sufficient velocity to break it up into a spray would conduct electricity sufficient to electrocute a person . . . [A] stream of water . . . about the size of your thumbnail . . . that would connect and [cause electricity to] go down the stream through the flowing, through the pipe and also energize the pipe itself.'' Plaintiff argues that this evidence should have been excluded from consideration of the jury because (1) there is ''no evidence in the record to show that it would be practical, either physically or economically, to sprinkle there,'' and (2) ''There is no evidence

that there would be any danger from the operation of a sprinkler system beneath the power line." Both arguments are without merit.

■ Defendant's witness, John A. Bryant, in the business of real estate, insurance and farming, with offices in the city of Redding, testified that he had had personal experience in the operation of farm property and of ranches, including "the operation of the Moore Ranch, one of the biggest ranches in the Anderson-Cottonwood Irrigation District." He had also personally "irrigated by sprinkler, by check, row crop and overnight." He was familiar with defendant's property and also "with properties upon which sprinkler systems have been used and are being used in this locality for the production of crops of the same type and contour and topography as the Hunt [defendant] land in cultivation." He had investigated the water table; stated that water from a creek would also "provide some means and assistance of irrigation"; and knew that "the neighbors' places south, most of them are irrigated by sprinkling systems." Bryant further testified that "I know in a prospective buyer's opinion that was looking at that [defendant's] ranch, it would be only prudent to irrigate. In fact, the ranch is not being put to its highest use by not irrigating right now. . . . There is no question but what a sprinkler system is the most economical" and would also require less water than other systems. Other witnesses testified that defendant's land is riparian to a creek having "a year round stream . . . capable of being used for irrigation," and that the water table in that locality is between 20 and 25 feet. This evidence obviously surmounts plaintiff's contention as to the asserted impracticability of sprinkler irrigation of defendant's land, as well as its further objection that "sprinkler irrigation . . . would be at best a speculative use not properly to be considered. . . ." ■ Further, as in *Pacific Gas & Elec. Co.* v. *Hufford, ante,* p. 545 [319 P.2d 1033], (Sac. 6844, see p. 557), plaintiff in its complaint herein pleads that "it is . . . necessary that . . . no well shall be located, drilled or operated within said [transmission line easements] by defendants, their successors or assigns, and that said defendants, their successors and assigns be prohibited from so doing." Thus, as in the Hufford case plaintiff, by seeking to expressly prohibit defendants from placing or operating a well within the transmission line easements precludes itself from objecting to competent evidence relating to possible sprinkler irrigation. Plaintiff's argu-

ments that other testimony to which it refers destroys the effect or value of that related hereinabove merely go to the weight of the evidence, which the trial court properly left for determination by the jury.

With respect to plaintiff's second argument, the court told the jury that Pritchett's testimony "pertaining to the conductivity of water under a specified circumstance is received subject to a motion to strike. That motion to strike will be granted unless evidence shall be presented to you that either for the purpose of irrigation . . . or for some other purpose there is some prospect of a jet of water striking the plaintiff's power lines on these premises. . . . [T]he Court . . . will hereafter inform you whether this testimony is to be considered by you or not in the light of further evidence as it may appear." Thereafter the court ultimately denied plaintiff's motion to strike and so informed the jury, although, argues plaintiff, no showing had been made of the prospect, which the court had mentioned to the jury, of a jet of water striking plaintiff's power lines. The following evidence sufficiently indicated this prospect, however, and thus, in plaintiff's words, met "the criteria which the court itself properly established."

As mentioned hereinabove plaintiff's evidence indicated that clearance of its power lines would never be less than 30 feet with maximum sag. Defendant's witness Gross, who, among other activities, lays out and installs sprinkler systems, testified that "we made a test this morning to determine the height that the water would go straight up in the air if a sprinkler head came off of a riser. We had no actual figures to work from, so we made an actual test with a gage of thirty-five pounds pressure at the outlet where the sprinkler head came off the pipe, and the column of water under thirty-five pounds pressure rose thirty-four feet in the air. . . . [T]here was a column of water . . . from visual observation, it was approximately a solid column. . . . It looked to me like . . . there was a jet, a solid jet of water still intact at the height of thirty feet." Although Gross also stated and defendant concedes that, as pointed out by plaintiff, a solid stream of water could not be projected straight up in the air when a sprinkler is operating correctly, Gross' testimony, as he explained on the witness stand, was based on a situation which would arise if a sprinkler head came off of a riser so that the jet of water would shoot straight up in the air instead of out at an angle, and he further stated that "if a man had a system

working that way, . . . He would correct it right away normally," thus putting his hands on the metal and giving rise to the hazard of being electrocuted which defendant sought to establish by Pritchett's testimony. ■ That a line carrying 220,000 volts of electricity is a dangerous instrumentality is a fact too well and commonly known to be disputed. (See *Polk* v. *City of Los Angeles* (1945), 26 Cal.2d 519, 525 [159 P.2d 931], and cases cited; see also *Beresford* v. *Pacific Gas & Elec. Co.* (1955), 45 Cal.2d 738 [290 P.2d 498]; *Dunn* v. *Pacific Gas & Elec. Co.* (1954), 43 Cal.2d 265, 272-275 [272 P.2d 745]; *Nevis* v. *Pacific Gas & Elec. Co.* (1954), 43 Cal.2d 626, 633 [275 P.2d 761]; 18 Am.Jur. 909, 933.) ■ Although the quantum of care will vary with the circumstances, it must be recognized that not only the owner of the transmission lines and the owner of lands beneath it but also the owners and operators of the lands within reach of a reasonably foreseeable hazard, such as a broken high voltage wire, must be diligent to foresee and guard against the dangers inherent in the proximity of the energy which can be lethal if it escapes. ■ It would be a question of fact in any particular case whether the operator of a sprinkler system should have foreseen the eventuality of a sprinkler head coming off a riser. ■ It is common knowledge that water pipes sometimes break or are broken from accidental or other causes. A sprinkler head is mechanical in operation and subject to wear and deterioration. ■ Gross' testimony sufficiently indicated the prospect of a jet of water striking the power lines as being a foreseeable hazard which an owner of the servient lands should guard against and Pritchett's testimony, dependent upon that of Gross, was properly submitted to the jury. Plaintiff's attack upon Gross' testimony, based upon various matters brought out on cross-examination, again merely goes to the weight of the evidence, which, as ruled by the trial court, was for the jury.

■ It should be further noted that "Although testimony relative to experiments is primarily addressed to the discretion of the trial court 'it must appear that the conditions or circumstances were in general the same in the illustrative case and the case in hand. . . . [T]he determination whether the conditions were sufficiently similar to make the experiments of any value in aiding the jury is a matter resting in the sound discretion of the judge.' [Citations.]" (*Beresford* v. *Pacific Gas & Elec. Co.* (1955), *supra*, 45 Cal.2d 738, 748 [9].) ■ A reasonably foreseeable hazard to be created

by stringing a 220,000 volt power line for more than 3 miles across one's land is manifestly a proper item to be considered in determining the damage to the property, not only to the land underlying the easement but also to all the land which conceivably might be affected by the hazard. ██ Evidence, whether or not including properly conducted experiments, tending to show what practical uses of the land—such as irrigated farming—would give rise to foreseeable hazards because of the construction and operation of the high-voltage line is pertinent to the issue being tried. (See *Colusa & Hamilton R. R. Co.* v. *Leonard* (1917), 176 Cal. 109, 114 [167 P. 878]; *City of Pasadena* v. *Stimson* (1891), 91 Cal. 238, 258-259 [27 P. 604]; *County Sanitation Dist No. 2* v. *Averill* (1935), 8 Cal.App.2d 556, 560 [47 P.2d 786]; *Lawlor* v. *Southern Pac. Co.* (1918), 39 Cal.App. 97, 100 [178 P. 165]; *County of Los Angeles* v. *Sullivan* (1916), 32 Cal.App. 325, 328 [162 P. 907].) No reasonably prudent person should be expected to purchase the land here in question without giving heed to the potentials of plaintiff's power line as well as practical uses of the land beneath and surrounding it, and the possible effects of the hazard upon the uses for which the land was otherwise suitable. No abuse of discretion has been shown in receiving the evidence of which plaintiff complains.

██ Plaintiff's next contention is that the court erred to plaintiff's prejudice in refusing to strike the testimony of Gross regarding the cost of installing a sprinkler system and the experiment conducted by him, "such testimony being incompetent, irrelevant to any issue, and unrelated to any evidence in the case." What we have already said concerning the testimony of Gross disposes of plaintiff's arguments with reference to evidence of the experiment or test conducted by him. Gross was also permitted, over plaintiff's general objection that the matter was "incompetent, irrelevant and immaterial," to testify concerning the increased cost of installing a sprinkler system on the plowed portion of defendant's property so as to avoid the danger of electrocution arising from carrying the sprinkler pipes back and forth under the proposed power lines. This increased cost was $4,363.84.

██ Plaintiff now urges, in reliance upon *People* v. *Al. G. Smith Co. Ltd.* (1948), 86 Cal.App.2d 308, 311-312 [194 P.2d 750], and *City of Los Angeles* v. *Kerckhoff-Cuzner etc. Co.* (1911), 15 Cal.App. 676 [115 P. 654], that it was improper for the court to receive evidence of increased costs as additional damage, rather than to confine the testimony to market

values only. In the first place, however, plaintiff did not raise this specific objection in the trial court, and may not advance it for the first time on appeal. The record shows that plaintiff's general objection in the trial court was based on its argument that defendant had failed to produce evidence of a water supply to sprinkle defendants' land, rather than on the particular objection to cost evidence now presented.

As declared in *Estate of Pierce* (1948), 32 Cal.2d 265, 273 [196 P.2d 1], "It is well settled that when a general objection to the admission of certain evidence is overruled by the trial court, the party against whom the ruling is made cannot raise for the first time on appeal a specific objection thereto, unless the evidence is not admissible for any purpose. [Citations.]"

In the second place, evidence of the increased cost of irrigation appears to have been proper. In *San Bernardino etc. Ry. Co.* v. *Haven* (1892), 94 Cal. 489, 493 [29 P. 875], it was "claimed by appellant that the court erred in admitting evidence of the increased cost which might result from a system of irrigation upon some tracts, which would have to be adopted if the railroad were built, beyond that which would be suitable if the road was not built. The objection urged is, that the land is uncultivated, and that no such system has yet been adopted, or is in contemplation of adoption. The land appears to have been unadapted to cultivation unless irrigated, and the damage caused by the building of the railroad would be increased if, by reason of such building, the owner was compelled to incur greater expense in its irrigation. Although then uncultivated, the land was shown to be adapted to cultivation. If so, the increase of any cost for bringing it under cultivation, caused by the building of the railroad through the land involved, would be a legitimate subject of inquiry for the purpose of ascertaining the damage sustained by the owner." The judgment was affirmed.

In the third place, no prejudice to plaintiff appears from the introduction of the cost figures. As defendant points out, they were offered only as an element to be considered by the expert in forming his opinion as to severance damage arising from depreciation in market value of the remainder of defendant's property as affected by the presence of the power lines. In *City of Los Angeles* v. *Frew* (1956), 139 Cal. App.2d 859, 866 [294 P.2d 1073], the trial court permitted defendants' witnesses to testify that the cost of installing an irrigation system would be increased by reason of the

taking of a right-of-way easement for electrical transmission lines through defendants' farm land. In holding that no prejudicial error was shown, the court on appeal commented that "The record shows that the trial court permitted testimony as to the fact of such increased costs but not the specific amounts thereof and that such evidence was permitted not to prove the fact or amount of said costs separately but only as elements of severance damage." Neither has prejudice to plaintiff been shown here. Plaintiff's objections to the testimony of the witness Hunt, that the increased annual cost of patrolling defendant's fences by reason of the access of plaintiff's employes would be $750, are likewise disposed of by what has been said with reference to the testimony of Gross. *Los Angeles etc. Ry. Co.* v. *Rumpp* (1894), 104 Cal. 20, 27-28 [37 P. 859], relied upon by plaintiff, turned upon statutory provisions relating specifically to fences along the line of a railroad, and is not in point here.

■ Plaintiff next asserts that prejudicial error was committed by the trial court in refusing to strike the testimony of defendant's valuation witnesses "who based their estimates of severance damages on remote, incompetent and speculative considerations," more particularly, upon elements relating to sprinkler irrigation. This contention is again based upon plaintiff's argument that evidence as to the hazards of sprinkler irrigation should have been excluded, and is disposed of by what we have said hereinabove with respect to the admission of such evidence. ■ Also, the statement by defendant's valuation witness Bryant that in reaching the $50,000 severance damage figure to which he testified he had taken into consideration "seven or eight things," and that "that's the exact same amount of proportion that the jury awarded in the Hufford case," furnishes no ground for reversal. This statement was not elicited by defendant. Rather, it was given by Bryant upon searching cross-examination by plaintiff's counsel attacking in detail Bryant's valuation testimony. Further, plaintiff points to no evidence that the jury were aware of the Hufford case. No prejudicial error is shown by the trial court's refusal to grant plaintiff's motion to strike "his whole testimony now—on the basis that he hasn't considered a proper element of damage."

■ Finally, plaintiff urges that the award of severance damages "is excessive, based upon incompetent and inadmissible evidence, without support in the record, and the result of passion and prejudice." Without here detailing plaintiff's

various attacks upon defendant's valuation witnesses, it suffices to state that plaintiff's arguments on this point go once more to the weight of the evidence rather than to its admissibility. As observed by plaintiff ''The only evidence pertaining to severance damages was provided by Hunt's [defendant's] valuation witnesses, Pacific's [plaintiff's] having found none. If the testimony of Hunt's witnesses were excluded, there would be no support in the record for the jury's award.'' We may assume that this comment of plaintiff is correct. Nevertheless, no basis for excluding such testimony has been shown. Defendant's witnesses were a real estate broker and neighboring ranchers. The trial court, in the exercise of its sound discretion, based on the evidence, found them to be qualified. (See *Pacific Gas & Elec. Co.* v. *Hufford, supra, ante,* p. 545; *Beresford* v. *Pacific Gas & Elec. Co.* (1955), *supra,* 45 Cal.2d 738, 749, and cases there cited.) They testified to severance damages far exceeding the $32,000 awarded by the jury. No improper element is shown to have entered into their testimony, and no ground for reversal is presented.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

McCOMB, J.—I dissent, for the reasons expressed by Mr. Presiding Justice Van Dyke in the opinion prepared by him for the District Court of Appeal (Cal.App.), 311 P.2d 878.

Appellant's petition for a rehearing was denied January 28, 1958. McComb, J., was of the opinion that the petition should be granted.