[Civ. No. 30974.   Second Dist., Div. Two.   Mar. 11, 1968.]

NAPLES RESTAURANT, INC., Plaintiff and Appellant, v.
COBERLY FORD, Defendant and Respondent.

Bernfeld & Cohen, Joseph Bernfeld and Robert A. Feldman for Plaintiff and Appellant.

Getz, Aikens & Manning, Peter S. Smith and Joel A. Goldman for Defendant and Respondent.

FLEMING, J.—Naples Restaurant appeals a judgment for defendant Coberly Ford in an action for fraud and breach of contract in the sale of a motor vehicle.

Plaintiff bought a 1962 Ford Thunderbird automobile from defendant in December 1961 for $4,728, plus sales tax. The automobile was described in the contract of sale as a new one, and nothing was said to plaintiff to indicate that it had been driven more than a minimal number of miles. Plaintiff was only told the car's fender skirts had been stolen and replaced. After the automobile had performed without substantial malfunction for about a year, plaintiff was informed by an anonymous telephone call that the car had been stolen before plaintiff bought it. In fact, the car had been stolen from defendant's premises about a month before its sale and found on an empty lot six days later with an odometer reading of 400 miles and without its fender skirts, wheels, hub caps, and tires. Defendant replaced the missing parts with new ones, cleaned up the car, and put it back in stock as a new automobile.

Plaintiff filed this suit in August 1963 for $1,000 general damages and $25,000 punitive damages. A jury awarded plaintiff $1,000 general and $8,500 punitive damages, but thereafter the trial court ordered a new trial unless plaintiff should consent to a reduction of the judgment to $368 general

and $5,000 punitive damages. Plaintiff refused to consent.

At the second trial the jury returned a verdict for defendant. Richard Niver, general manager of defendant, testified that the automobile at the time of sale was worth more than plaintiff paid for it; that its manufacturer's list price was $5,300; that its Kelly Blue Book price as a used Thunderbird in March-April 1962 (three months after the sale) was $5,095, a figure which compared with its actual selling price of $4,728. Niver also stated that in December 1961, the second month of the model year, the demand for Thunderbirds exceeded the supply.

On appeal, plaintiff principally contends the trial court erred in rejecting the testimony of an automobile salesman on the value of the Thunderbird at the time of its sale. Plaintiff sought to qualify John DeJohn as an expert on the value of motor vehicles in December 1961. The witness had sold automobiles since 1952, including Ford vehicles for a total of five years, and in December 1961 was engaged in selling Chrysler automobiles, one series of which was competitive with the Thunderbird. Plaintiff sought to introduce this witness' opinion of the value in December 1961 of a Thunderbird with the history of the car in question. The court sustained an objection to the testimony on the ground the witness was not qualified to give an expert opinion on the value of a Thunderbird.

To analyze the propriety of this ruling we start with some reference to basic principles. The qualification of a witness as an expert on a particular subject is a matter within the discretion of the trial court, whose discretion ordinarily will not be disturbed unless it has been abused. (*People* v. *Davis,* 62 Cal.2d 791, 800 [44 Cal.Rptr. 454, 402 P.2d 142].)

The essential questions which must be favorably answered to qualify the witness as an expert are two: Does the witness have the background to absorb and evaluate information on the subject? Does he have access to reliable sources of information about the subject? Two aspects of the witness' history are thus involved: the first, a subjective aspect, the capacity of the witness to understand and report; the second, an objective aspect, the witness' access and exposure to relevant data on the subject matter on which his opinion is sought. Professor Wigmore describes these elements as (1) the witness' Experience and Capacity; and (2) his Observation and Knowledge. (Wigmore on Evidence (3d ed.) §§ 556, 558, 651, 653, 711, 712.)

██ The first element, the capacity of the witness does not appear a matter of serious controversy in the present case. The witness actively functioned in the marketplace as a salesman of the general product, automobiles, about which his opinion on value was sought. ██ True, the witness was a salesman and not a professional appraiser, but the sources of expert opinion on value are not restricted to those who make its determination a full-time occupation. (*People* v. *Alexander*, 212 Cal.App.2d 84, 91 [27 Cal.Rptr. 720].) No special training or occupation is necessary to qualify a witness to estimate values. ██ We think a salesman for a product may qualify as a witness on the value of that product. (Evid. Code, § 801.)

██ The supposed defect in the witness' qualification arose from the second element, his observation and knowledge of the subject on which his opinion was sought, specifically the value of articles in the class of which the article at issue was a part. In effect, the trial court defined the class of articles about which the witness was required to be knowledgeable as Thunderbird automobiles rather than as the larger class of passenger automobiles in a particular price range of which Thunderbirds comprised a part. Having so restricted the class, the court concluded the witness was not qualified to testify on the subject on which his opinion was sought—the value of Thunderbirds in December 1961. As a consequence of this ruling plaintiff was required to produce an expert witness who possessed direct knowledge of the value of Thunderbirds rather than one who, like DeJohn, possessed general knowledge of the value of passenger automobiles in a particular price range. This requirement plaintiff would not, or could not, meet.

The specific question here is whether the trial court too narrowly defined the class of articles about which the witness could express an opinion as an expert on value. We are inclined to think the court's ruling was unnecessarily restrictive. True enough, the witness at the time of the questioned sale was selling a competitive make of automobile. But we see no compelling reason to limit his testimony on the market value of automobiles to the product of a single manufacturer. We think anyone actively engaged in the business of selling passenger automobiles is likely to have an informed opinion on the market price and value of his own and comparable makes of automobiles, that such an opinion is of sufficient moment to be received in evidence. The valuation of motor vehicles is not an arcane art like brain surgery, whose mys-

teries are known only to a select few, but a subject of widespread familiarity and general understanding among those engaged in the automobile business. An active, experienced automobile salesman, when divorced from any pecuniary interest of his own, may be a reliable source of information on market price, not only of the automobiles he sells, but also of those with which his line directly competes. We think the rigors of cross-examination provide ample safeguard against the spurious expert who has no real knowledge of the subject on which he professes competence. We conclude that the trial court defined the field of DeJohn's competence too narrowly, that DeJohn's familiarity in December 1961 with the market for passenger automobiles in a particular price range qualified him to give an opinion on the value of the property involved in this case. Cases dealing with the qualifications of witnesses to testify on the value of real property lend support to our reasoning. (*San Diego Land etc. Co.* v. *Neale*, 78 Cal. 63, 76-79 [20 P. 372, 3 L.R.A. 83]; *City of Stockton* v. *Ellingwood*, 96 Cal.App. 708, 716 [275 P. 228]; *Los Angeles City High School Dist.* v. *Rodriguez*, 135 Cal. App.2d 760, 766-769 [287 P.2d 871].)

We also think the exclusion of this evidence was sufficiently prejudicial to require a reversal of the judgment. The ruling left plaintiff without any evidence on the question of value except the opinions of its owners. Opinions of litigants on the value of property in which they have an interest are notorious for their exaggeration and are heavily discounted by triers of fact. As a consequence plaintiff found itself claiming damages with no independent evidence to back up its claim. An informed opinion that the Thunderbird was worth less than the price paid might well have induced the jury to return a verdict in plaintiff's favor, at least for a nominal amount of damages.

In view of the reversal of the judgment because of the exclusion of evidence, we do not discuss the other assignments of error, except to observe that the statutory definition of a new vehicle in section 430 of the Vehicle Code seems relevant only to the understanding and good faith of the seller on the issue of fraudulent misrepresentation.

In sending the case back for a third trial we do not imply any endorsement of the amount of plaintiff's claim for damages, nor do we suggest any justification for plaintiff's refusal to accept the trial court's award at the conclusion of the first trial. Attempts by litigants to get a great deal for

very little usually defeat themselves in the long run and tend to frustrate the recovery of damages in legitimate amounts. We merely determine by our judgment that on a full presentation of the evidence the trier of fact might find that plaintiff had suffered some compensable damage.

Judgment reversed.

Roth, P. J., and Herndon, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 9, 1968.