[No. 19216. Department One. — December 21, 1893.]

THE CITY OF SAN LUIS OBISPO, APPELLANT, v.
MARIANA BRIZZOLARA ET AL., RESPONDENTS.

EMINENT DOMAIN—CONDEMNING LAND FOR PUBLIC STREET—EVIDENCE—
PRICE PAID FOR OTHER LAND—REPORT OF COMMISSIONERS.—In pro-
ceedings for the condemnation of land for a public street, a report of
the commissioners showing what they had paid for other land in the
vicinity by agreement is not admissible in evidence for the purpose of
showing the market value of the land sought to be condemned. What
the party condemning has paid for other property is incompetent evi-
dence.

ID.—EFFECT OF CROSS-EXAMINATION.—Though the report of the commis-
sioners may be properly brought before the court on cross-examination,
for the purpose of testing the evidence of the commissioners on the
question of market value, it is not competent to admit it or consider it
as affirmative evidence on the question of value.

APPEAL from a judgment of the Superior Court of
San Luis Obispo County, and from an order denying a
new trial.

The facts are stated in the opinion of the court.

*William Shipsey*, for Appellant.

*Wilcoxon & Bouldin*, and *J. M. Wilcoxon*, for Respond-
ents.

HARRISON, J.—Proceedings to condemn certain lands
for a public street in the city of San Luis Obispo. The
jury assessed the value of the land taken from the
defendants at $6,500. The plaintiff moved for a new
trial, upon the ground that the verdict was not sustained
by the evidence. The court below was of this opinion,
but held that the evidence would support a verdict for
$5,000, and made an order that if the defendants would
remit $1,500 a new trial should be denied. The defend-
ants having remitted that amount, the court denied a
new trial, and the plaintiff has appealed.

We have carefully examined the record, and are
unable to concur with the views of the learned judge of
the court below. The land sought to be taken for the

street has a frontage of eighteen feet and ten inches on Monterey street; and the highest estimate placed upon its value by any witness who testified upon the subject is $200 per front foot. Other witnesses estimated its value at a much lower amount. Some of the witnesses for the defendants stated that they estimated the land upon that side of the creek as worth about 25 per cent more than land upon the other side, and one of them said that if he was to buy this property he would pay from 20 to 25 per cent more than he would for property on the other side of the creek. Neither of these witnesses, however, gave any evidence of the value of the land on either side of the creek, and the only testimony of the value of the land upon the other side was that of the witness Warden, who said that he gave $150 a foot for it. The defendants introduced in evidence the report of the commissioners who had been appointed to determine its value under the statute by virtue of which the proceedings were had (Stats. 1889, p. 70), from which it appeared that they had awarded to the owner of ten feet of land on the other side of the creek, which had been taken under the same proceeding, the sum of $3,750, which was made up as follows: land taken, $2,500; damages to improvements, $1,000; damages to realty affected, $250; and that they had also awarded to these defendants for the land in question, $3,900. These commissioners were also witnesses at the trial and testified that the value of the land in question was $150 a front foot. They also stated that they had allowed the sum of $3,900 to the defendants for the reason that they were willing to pay more than the property was worth for the sake of time and to prevent a lawsuit; and that they had been willing to pay more for the land on the other side of the creek than they thought the property was worth in order to save a condemnation suit.

We do not consider that this report of the commissioners was competent to show the value of the land in question. It has been held that for the purpose of ascer-

taining the value of a piece of land, evidence may be received of sales of other parcels of land in the immediate vicinity, similarly situated, if recently made. But we have not been referred to any case in which it has been held that the value fixed by an agreement between the owner and a corporation seeking to condemn his land by virtue of eminent domain can be taken as a criterion of the market value of other land in that vicinity. As was said by the supreme court of Massachusetts in *Cobb* v. *City of Boston,* 112 Mass. 181: " The price so fixed by compromise, when there can be no other purchaser, and the seller has no option to refuse to sell, and can only elect between the acceptance of the price offered and the delay, uncertainty, and trouble of legal proceedings for an assessment, is not a reasonable or fair test of market value. It is in no sense a sale in the market." Mr. Lewis in his treatise on Eminent Domain, section 447, says: "What the party condemning has paid for other property is incompetent. Such sales are not a fair criterion of value, for the reason that they are in the nature of a compromise. The fear of one party or the other to take the risk of legal proceedings, ordinarily results in the one party paying more, or the other taking less, than is considered to be the fair market value of the property. For these reasons such sales would not seem to be competent evidence of value in any case, whether in a proceeding by the same condemning party, or otherwise." (See also *City of Springfield* v. *Schmook,* 68 Mo. 394; *Brunswick etc. R. R. Co.* v. *McLaren,* 47 Ga. 546; *Fall River Print Works* v. *Fall River,* 110 Mass. 428; *Matter of Thompson,* 127 N. Y. 463; *Central Pac. R. R. Co.* v. *Pearson,* 35 Cal. 262.) In *Spring Valley Water Works* v. *Drinkhouse,* 92 Cal. 532, where the court had endeavored to ascertain the value of the property sought to be condemned, and a witness had been asked how much the plaintiff had paid for other lands, we said: "However the rule may be in other states, it is settled here that such facts are not admissible as evidence in chief, but only by way of cross-examination for

the purpose of testing the fairness or honesty of an opinion which the witness may have given upon his direct examination in relation to the value of the property involved in the action." In the present case the above evidence was proper in cross-examination of the plaintiff's witnesses for the purpose of testing the accuracy and honesty of the opinions which they had given of the value of the land in their direct examination, but, as it would not have been admissible as affirmative evidence for the purpose of establishing the value of the land in question, it was not competent for the court to consider it for that purpose, even though properly brought before it in cross-examination. It may be added that, even if it had been competent evidence of the value of the land for which the price was given, it would not sustain the conclusion of the court.

The judgment and order are reversed, and the court is directed to grant a new trial of this issue.

PATERSON, J., and GAROUTTE, J., concurred.