[L. A. No. 24444.   In Bank.   June 21, 1957.]

COUNTY OF LOS ANGELES, Respondent, v. L. C. FAUS et al., Appellants.

Holbrook, Tarr, Carter & O'Neill, W. Sumner Holbrook, Jr., Francis H. O'Neill, S. V. O. Prichard, Charles F. Reiche, Walhfred Jacobson, City Attorney (Long Beach), Joseph B. Lamb, Assistant City Attorney, John Anson, Irl D. Brett and Thomas G. Baggott for Appellants.

Harold W. Kennedy, County Counsel, John H. Larson, Richard L. Riemer, Arthur Loveland and Lloyd S. Davis, Deputy County Counsel, for Respondent.

McCOMB, J.—Defendants appeal from a judgment in a condemnation proceeding after a trial by jury which fixed the value of their property to be acquired by plaintiff.

Defendants are the owners of certain elongated strips of realty situated in the cities of Alhambra and San Marino. These strips are portions of an abandoned right of way in the center of Huntington Drive that formerly provided the street-car route from Los Angeles northeasterly through the Santa Anita area. The vacant right of way is 60 feet wide and divides Huntington Drive. Parcel 20-2, bounded by Stoneman Avenue, Atlantic Avenue and the two sides of Huntington Drive, is 113.71 feet in length. Parcel 20-3 runs easterly from Stoneman to Granada Boulevard, a distance of 1435.13 feet. The northerly half of each parcel is located within San Marino; the southerly half within Alhambra.

Plaintiff has condemned a 30-foot strip running along the southerly edge of each parcel for the purpose of widening Huntington Drive.

The only witnesses on behalf of plaintiff, Frank C. Wood and J. B. Irvin, testified that they based their estimates of market value of the subject property "primarily" upon prices paid on 12 sales of rights of way, eight of which had been made

to government agencies possessing the power of condemnation. Five consisted of strips of land that had no street access whatsoever, unlike the situation existing here. Several of the parcels purchased by government agencies with power of condemnation were in fact situated "15 or 20 miles" from defendants' property.

At the close of witness Wood's cross-examination, defendant moved to strike his testimony on the market value of the subject property upon the ground that it was based upon two incompetent considerations, to wit, (1) consideration of incompetent sales to public bodies with power of condemnation, and (2) the witness' conception that the market value of the property was its value in use to the condemning county and not its highest and best use to the public generally. This motion was denied. A similar motion was not made at the end of witness Irvin's testimony; however, in view of the previous ruling of the court it is apparent that such a motion would have been futile.

At the end of the trial defendant offered the following instructions, which the trial judge refused:

"You are instructed that the price fixed by an agreement between the owner of property and public corporations, such as the State of California, County of Los Angeles, or municipal corporation, seeking to condemn the land by virtue of eminent domain or having the power so to do, cannot be taken as a criterion of the market value of other land in the vicinity. The prices so fixed by compromise, when there can be no other purchasers, and the seller has no option to refuse to sell and can only elect between the acceptance of the price offered and the delay, uncertainty and trouble for legal proceedings of an assessment, is not a reasonable or fair test of just compensation for the defendant's property. It is in no sense a sale in the market.

"You are instructed that the price paid by a public corporation such as the State of California, County of Los Angeles, or any municipal corporation, for other property, said party having the right of condemnation by virtue of eminent domain, is not a proper basis for a determination of market value of the property here in question. Such sales are not a fair criterion of value for the reason that they are in the nature of a compromise. The fear of the one party or the other to take the risk of legal proceedings ordinarily results in the one party's paying more or the other party's taking less than is considered to be the fair market value of the property.

For these reasons such sales are not proper evidence of value in any case, whether in a proceeding by the same condemning party or otherwise.''

■ These questions are presented for our determination: *First*: *Did the trial court err in refusing to give the instructions requested by defendant set forth, supra?*

*Yes.* In passing upon the contention that two instructions almost identical with the requested instructions in this case were correct and properly given in a condemnation case, this court said in *City of Los Angeles* v. *Cole,* 28 Cal.2d 509, 517 [170 P.2d 928]: ''Contrary to appellants' claim, the challenged instructions correctly state the law governing the jury's determination of the market value problem in the light of evidence adduced. As claimed by respondent, these instructions are in part a paraphrase and in part a precise reproduction of a quotation from Mr. Lewis in his treatise on Eminent Domain (1st ed., § 447; 3d ed., § 667) as discussed with approval in the early case of *City of San Luis Obispo* v. *Brizzolara,* 100 Cal. 434, 436 [34 P. 1083].''

Based on the foregoing authorities the trial court erred in refusing to give the requested instructions to the jury. Although we have concluded that these authorities should no longer be controlling for the reasons set forth below, the judgment will be reversed so that the parties herein may try the issue of value according to the rule herein adopted.

■ *Second:* In view of the provision in section 53 of the Code of Civil Procedure that ''. . . if a new trial be granted, the court shall pass upon and determine all the questions of law involved in the case, presented upon such appeal, and necessary to the final determination of the case,'' this question is presented: *In a condemnation proceeding, is evidence of the prices paid for similar property in the vicinity, including prices paid by the condemner, admissible on (a) direct examination, and (b) cross-examination of a witness who is presenting testimony on the issue of the value of the condemnee's property?*

*Yes.* Section 1872 of the Code of Civil Procedure provides: ''Whenever an expert witness gives his opinion, he may, upon direct examination, be asked to state the reasons for such opinion, and he may be fully cross-examined thereon by opposing counsel.''

The reasons in support of the admissibility of such evidence are stated by Professor Wigmore in his treatise on the law of Evidence (3d ed. 1940), volume 2, section 463, pages 503

et seq., as follows: "When the conduct of others indicating the nature of a salable article consists in offering this or that sum of money, it creates the phenomena of *value*, so-called. For evidential purposes, Sale-Value is nothing more than the nature or quality of the article as measured by the money which others show themselves willing to lay out in purchasing it. Their offers of money not merely indicate the value; they *are* the value; i.e. since value is merely a standard or measure in figures, those sums taken in net potential result are that standard.

"But the evidential question is not concerned with the many subsidiary principles of the law of Damages, or *standard of value*, that come into play. Whether an unaccepted offer of purchase at a certain figure may be looked to as determining value, or whether the price of a sale or the cost of making may be looked to, — these are questions which arise because value is a test formed by averaging results and because it is necessary to define the range over which the true idea of value permits the estimate to go. That is not an evidential process, but a process of average calculation. So, too, the question whether the value of the article at another time or another place may be resorted to depends on whether, in defining the range of data, it is fair for the purposes in hand to allow marketability at another place or time to be considered; there the process is still one of defining the range of the value-idea. . . .

"There is, however, one question indirectly involving a rule of Evidence, — the question whether the value of *another article* is receivable in order to show the value of the *article in issue*. As the price at a sale is, by the law of Damages, conceded to be an element in the test of value (except perhaps in forced sales), this question is usually presented in the form, whether a *sale of other property* is admissible as evidence of the value of the property in question.

"In answering this question, it is found that the two leading principles already expounded come into joint application, — the principle of Relevancy and the principle of Auxiliary Policy. According to the former, the value or sale-price of the other property is relevant only when the property is *substantially similar in conditions;* according to the second, it may be excluded, though relevant, if it involves in the case in hand a disproportionate *confusion of issues* and loss of time.

". . . . . . . . . . . .

"It is enough to note (1) in answer to the argument from

Relevancy, that since value is a money-estimate of a marketable article possessing certain definable qualities, the value of other marketable articles possessing substantially similar qualities is strongly evidential and is so treated in commercial life; all the argument and protestation conceivable cannot alter the fact that the commercial world perceives and acts on this relevancy; (2) in answer to the argument from Auxiliary Probative Policy, it may be noted that this objection may or may not exist in a given instance, and that the rational and practical way of meeting it is to allow the trial Court in its discretion to exclude such evidence when it does involve a confusion of issues, but otherwise to receive it. . . .

"Except in a few jurisdictions, this class of evidence is received." (See also note II, 118 A.L.R. 870; note II, 174 A.L.R. 387.)

The following excerpt from McCormick on Evidence (1954), section 166, page 348, is here pertinent: "*Other Sales of Similar Property as Evidence of Value.* In case of ordinary personal property, where market value is sought, of course the most obvious resort is to evidence of what other similar property, whether wheat, shoes, horses, or what not, currently sold for on the market at that place. . . .

"Any tract of land is considered unique, and consequently it is in cases of land valuation, and especially in condemnation cases, that the question of admissibility of evidence of prices paid on other sales is most frequently discussed. A few states have been unwilling to admit such evidence save in exceptional circumstances. This seems to put too heavy a strain on opinion evidence and the general knowledge of the jurors, and the view of the majority of courts which admits such evidence, within safeguarding limits, seems preferable.

These safeguards are the following: The sales of the other tracts must have been sufficiently near in time, and the other land must be located sufficiently near the land to be valued, and must be sufficiently alike in respect to character, situation, usability, and improvements, to make it clear that the two tracts are comparable in value and that the price realized for the other land may fairly be considered as shedding light on the value of the land in question. Manifestly, the trial judge in applying so vague a standard must be granted a wide discretion.

"Since the market value sought is the estimate of what a willing [buyer] would have paid a willing [seller], prices on other sales of a forced character are inadmissible. . . .

[E]vidence of the price paid [by the condemner] should come in if the condemner can satisfy the judge that the price paid was sufficiently voluntary to be a reasonable index of value. In any event, the sale must be genuine, and the price must be actually paid or substantially secured." (See also dissenting opinion of Carter, J. in *City of Los Angeles* v. *Cole*, 28 Cal.2d 509, 523-524 [170 P.2d 928].)

In taking this position it is recognized that we are overruling a line of decisions in this state that announce a contrary rule. The former rule was contrary to logic, unrealistic, and followed in only a few other states. It was merely a rule of procedure. Therefore, it becomes our duty not to follow decisions that we are convinced are erroneous and obsolete. (See Traynor, J., *People* v. *La Macchia*, 41 Cal.2d 738, 754 [264 P.2d 15] ; Carter, J. and Schauer, J., *Heimann* v. *City of Los Angeles*, 30 Cal.2d 746, 760 [185 P.2d 597] ; Ashburn, J., *County of Los Angeles* v. *Faus*, (Cal.App.) 304 P.2d 257, 270.)

The rule of *stare decisis* is not so imperative or inflexible as to preclude a departure therefrom in any case, but its application must be determined in each instance by the discretion of the court. Previous decisions should not be followed to the extent that error may be perpetuated and that wrong may result.

This view finds support in our own decisions. Mr. Justice Sloss, in *San Pedro, L. A. & S. L. R. Co.* v. *City of Los Angeles*, (Cal.) 179 P. 390 [2], accurately states the rule: "On the appeal in L.A. No. 4600 we are, however, at liberty to consider the appellant's contention that the former decision of this court was erroneous, and that it should not be followed. That decision has, to be sure, the persuasive force attaching to any deliberate expression of the court. No property rights appear, however, to have been acquired on the faith of the ruling, and if, upon further consideration, we should feel satisfied that a wrong conclusion was reached, it is right and proper that we should so declare, to the end that the true rule, as we now see it, should be established and enforced." The foregoing rule is applicable in the instant case.

The reason given for excluding evidence of sales of similar property in the early case of *Central Pac. R. R. Co.* v. *Pearson*, 35 Cal. 247, is not persuasive, is specious, and should no longer be followed. The court (p. 262) stated its reason for excluding evidence as to particular transactions as follows: "But, while the opinions of witnesses thus qualified by their knowledge

of the subject are competent testimony, they cannot, upon the direct examination, be allowed to testify as to particular transactions, such as sales of adjoining lands, how much has been offered and refused for adjoining lands of like quality and location, or for the land in question, or any part thereof, or how much the company have been compelled to pay in other and like cases—notwithstanding those transactions may constitute the source of their knowledge. If this was allowed, the other side would have a right to controvert each transaction instanced by the witnesses, and investigate its merits, which would lead to as many side issues as transactions, and render the investigation interminable.''

█ Any statements in the following cases contrary to the rule we now approve are overruled: *People* v. *La Macchia,* 41 Cal.2d 738 [264 P.2d 15] ; *Heimann* v. *City of Los Angeles,* 30 Cal.2d 746 [185 P.2d 597] ; *City of Los Angeles* v. *Cole,* 28 Cal.2d 509 [170 P.2d 928] ; *City of Los Angeles* v. *Hughes,* 202 Cal. 731 [262 P. 737] ; *City of San Luis Obispo* v. *Brizzolara,* 100 Cal. 434 [34 P. 1083] ; *Spring Valley Water Works* v. *Drinkhouse,* 92 Cal. 528 [28 P. 681] ; *Central Pac. R. R. Co.* v. *Pearson,* 35 Cal. 247.

Statements in the following cases contrary to the rule announced in this decision are disapproved: *City of Los Angeles* v. *Frew,* 139 Cal.App.2d 859 [294 P.2d 1073] ; *People* v. *Union Machine Co.,* 133 Cal.App.2d 167 [284 P.2d 72] ; *Atchison etc. Ry. Co.* v. *Southern Pac. Co.,* 13 Cal.App.2d 505 [57 P.2d 575] ; *City of Los Angeles* v. *Deacon,* 119 Cal.App. 491 [7 P.2d 378] ; *Los Angeles Gas & Elec. Corp.* v. *Etienne,* 83 Cal. App. 645 [257 P. 123] ; *Reclamation Dist. No. 730* v. *Inglin,* 31 Cal.App. 495 [160 P. 1098].

*Third: Should the law as now established by this court be given retrospective or prospective effect?*

█ The law is settled that there is no constitutional objection to an appellate court's making a choice for itself, in overruling an earlier decision, whether the new rule declared by it shall operate prospectively only or apply retrospectively. (*Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.,* 287 U.S. 358, 363 et seq. [53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254] ; *cf.* Traynor, J., *Sutter Basin Corp.* v. *Brown,* 40 Cal.2d 235, 249 [253 P.2d 649] ; *People* v. *Ryan,* 152 Cal. 364, 369 [92 P. 853] ; *People* v. *Maughs,* 149 Cal. 253, 263 [86 P. 187] ; 17 Minn.L.Rev. 811; 28 Ill.L.Rev. 277; 11 N.C.L.Rev. 323.)

The determination by the court is dependent upon the equities in each case.    █    It is the general rule that a deci-

sion of a court of supreme jurisdiction overruling a former decision is retrospective in its operation and that the effect is not that the former decision was bad law but that it never was the law.

A well-recognized exception to this general rule is that, where a constitutional provision or statute has received a given construction by a court of last resort and contracts have been made or property rights acquired under and in accordance with its decision, such contracts will not be invalidated nor will vested rights acquired under the decision be impaired by a change of construction adopted in a subsequent decision. Under those circumstances it has been the rule to give prospective, and not retrospective, effect to the later decision. (7 R.C.L. (1915), Courts, § 36, p. 1010.)

Applying the foregoing principles to the facts in the instant case, it is apparent that it was tried by the trial judge and attorneys for both parties upon a theory of law heretofore announced by this court that we are now overruling. It is also evident that neither contract nor property rights have vested in either party by virtue of our previous decisions on the points here involved. Therefore, this case falls within the general rule set forth above and not within the exception. The rule now announced is available to both parties upon a retrial.

The judgment is reversed and a new trial is ordered.

Carter, J., Traynor, J., and Schauer, J., concurred.

SPENCE, J.—I dissent.

It appears to me that the majority has adopted a novel type of judicial technique in reaching its conclusion that the judgment should be reversed. It reverses upon the single ground that the trial court erred in refusing to give certain instructions requested by defendants. The majority bases its reversal solely upon the alleged authority of *City of Los Angeles* v. *Cole*, 28 Cal.2d 509 [170 P.2d 928], and the cases cited therein; but the majority then proceeds to overrule the very cases upon which its reversal is based, declaring that "these authorities should no longer be controlling." In other words, the trial court's ruling is declared to be both erroneous and not erronoeus within the confines of a single opinion. Thus it is impossible to know what rule the majority establishes as the law of the case to govern the trial court on a retrial of the

cause. Furthermore, the majority fails to discuss whether the error, if any there be, was prejudicial, thereby ignoring the constitutional mandate prohibiting the reversal of a judgment unless "the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Const., art. VI, § 4½.)

I am of the opinion that the record discloses no prejudicial error, and that the judgment should therefore be affirmed. With respect to the specific ground upon which the majority bases its ambivalent declaration of error, I am of the view that the trial court did not err in refusing to give defendants' requested instructions. Neither *City of Los Angeles* v. *Cole, supra,* 28 Cal.2d 509, nor any other cited case, is authority for the majority's holding that such refusal constituted error.

In the Cole case, the property involved was in an area which had been designated for a civic center, and much of the property required for that purpose had been acquired or was being acquired. Many condemnation proceedings had been commenced. In other words, all property was being acquired under condemnation or the immediate threat of condemnation. The condemner was, in reality, buying under compulsion and the sellers were selling under compulsion. Under these circumstances and "in the light of the evidence adduced," we held in the Cole case that it was proper to instruct the jury that "*the price paid by plaintiff condemner* for other property is not a proper basis for determining the market value of the property here in question," and that "the price fixed by an agreement between the owner of property and *a public corporation seeking to condemn* his land by virtue of eminent domain cannot be taken as a criterion of the market value of other land in the vicinity." (28 Cal.2d 516-518; emphasis added.)

In the present case, the 12 prior sales in question were not sales to plaintiff but were sales by the Pacific Electric and the Huntington Land Company to public bodies, other than plaintiff, and to private individuals, of portions of abandoned rights-of-way. There is nothing in the record to show that there was any threat of condemnation present at the time that any of such sales were made. On the contrary, the evidence shows that these sales were sales "on the open market without compulsion." Under these circumstances, the prior sales here were clearly distinguishable from the prior sales in the Cole case.

Similarly, the instructions in the Cole case were materially

different from defendants' requested instructions here, even though some of the language was similar. The vice of the defendants' requested instructions here is that they purported to cover every sale made to any public body "having the power" of condemnation. No such broad declaration was made in the instructions in the Cole case. The concept embodied in the requested instructions here is erroneous, and said instructions cannot be said to be "almost identical" with those given in the Cole case. As was said in *O'Malley* v. *Commonwealth*, 182 Mass. 196 [65 N.E. 30, 31] : "We cannot say merely because of the name of the purchaser that the sale was not a fair transaction in the market rather than a compulsory settlement. The board has power to purchase as well as to condemn land."

So here, the other public bodies had power to purchase, and did purchase, and there is no evidence to show that any of the sales made either to public bodies or to private individuals were made under compulsion or threat of condemnation. The requested instructions were therefore erroneous and were properly refused.

The other main ground urged by defendants for reversal is that the trial court committed prejudicial error in refusing to strike the testimony of plaintiff's experts. The majority opinion refers to this ruling on the motion but does not discuss or pass upon defendants' contention. In my opinion, the trial court properly denied the motion to strike such testimony.

Plaintiff's experts did not base their opinions *solely* upon the price paid by other public bodies, but these opinions were also based on the price paid by private individuals for portions of abandoned rights-of-way. These experts also considered some 40 private sales of property in the vicinity but not located on the narrow right-of-way in the middle of a divided highway. They conceded that they had "practically" rejected the prices paid on these 40 sales in determining the value of the right-of-way property but they gave ample reason for so doing. Their testimony also showed ample reason for determining that the prior sales of abandoned right-of-way property was the best criterion available to determine the value of the narrow strip in question. In view of the qualifications of these experts and the reasons given by them, the mere fact that they based their opinions *principally* on such prior sales of abandoned right-of-way property

was not a sufficient ground for striking their entire testimony.

On the other hand, defendants' witnesses took the position exemplified by Mr. Frisbie's testimony. He said: "I have taken into consideration the sale of properties on both sides of Huntington Drive, and *have considered that that right-of-way strip had a value just as high as the properties on both sides.*" (Emphasis added.) The unsoundness of this conclusion is apparent. The sales of property along Huntington Drive other than right-of-way property were sales of lots of normal size, which lots were not part of a narrow strip in the middle of a divided highway. Those sales were of property which was zoned for a normal use by an ordinary purchaser. The narrow strip in the highway was zoned for transportation, park, and recreation purposes only, and was too narrow to permit the building of any useful structure within normal setback lines. There appeared to be little likelihood of a change in the zoning or the set-back ordinances, and all experts apparently conceded that the highest use of the narrow right-of-way strip was for some form of transportation purposes. In the absence of any demand for such property by ordinary purchasers and in view of the property's availability only for limited uses, it seems obvious that the valuations of plaintiff's experts more nearly reflected the "market value" than did those of defendants' experts. The jury fixed a valuation substantially higher than that fixed by plaintiff's experts, and the jury's award also included substantial severance damages even though plaintiff's experts were of the opinion that no such severance damages were involved.

It therefore appears to me that defendants have had a fair trial, and that they have received an award which represents "just compensation" for the property involved. (Const., art. I, § 14.) In fact, it is doubtful whether upon a second trial, defendants would receive an award in an amount as great as that heretofore fixed by the jury.

The novelty of the judicial technique adopted by the majority is more clearly illustrated by the second portion of the majority opinion. Upon the theory that a certain problem is "presented upon [this] appeal" (Code Civ. Proc. § 53), the majority declares that the following question is presented: "In a condemnation proceeding, is evidence of the prices paid for similar property in the vicinity, *including prices paid by the condemner, admissible on (a) direct examination,* and (b) cross-examination of a witness who is presenting testimony

on the issue of the value of the condemnee's property?'' (Emphasis added.) The majority answers this question in the affirmative and in doing so, it purports to overrule a long line of decisions of this court commencing with *Central Pac. R. R. Co.* v. *Pearson* (1868), 35 Cal. 247, and ending with *People* v. *La Macchia* (1953), 41 Cal.2d 738 [264 P.2d 15], together with numerous decisions of the district courts of appeal.

The truth of the matter is that no such question is presented upon this appeal. All parties introduced without objection, on cross-examination of the experts, any evidence which they desired concerning ''the prices paid for similar property in the vicinity'' upon which the opinions of the experts had been based; but no party introduced or sought to introduce any such evidence on direct examination of the experts. Furthermore, none of the sales to which the experts referred involved sales to the ''condemner,'' and therefore no party sought to introduce evidence on either direct or cross-examination of any ''prices paid by the condemner.'' It is therefore understandable that all parties agreed on the oral argument before this court that the quoted question as stated by the majority is not presented upon this appeal.

The unusual procedure of injecting a false issue into this case can probably be explained only by the apparent eagerness of the majority to find a vehicle for effecting the change of a long-standing and well-established rule of evidence with which the majority does not agree. Regardless of the question of whether that rule should or should not be changed, the present appeal obviously does not constitute an appropriate vehicle for that purpose. In fact, it appears that the majority's injection of this issue into this appeal has resulted in an abortive disposition of the appeal on the merits as presented by the record and by the parties. Certain it is that the reversal requires the majority, for the purpose of the reversal only, to take a position directly contrary to the position stated by three members of the majority in their dissenting opinion in *City of Los Angeles* v. *Cole, supra,* 28 Cal.2d 509, 519. I am certain that no member of this court, regardless of whether he may have joined in the majority or minority opinion in the Cole case, is of the view that defendants' requested instructions in the present case were proper, and that such requested instructions should have been given. It bears repeating, however, that the trial court's

failure to give said requested instructions is the sole basis for the reversal ordered by the majority here.

Before concluding, and in spite of the fact that the issue discussed in the second portion of the majority opinion is not involved on this appeal, I feel impelled to express my disagreement with the majority's action in overruling and disapproving a long line of decisions which have established the rules of evidence applicable in condemnation cases. I am of the opinion that the established rules have operated satisfactorily and that they should not be changed. The change favored by the majority would permit an expert witness, on direct examination, to testify concerning the details of every sale of other property which he has considered in arriving at his opinion of the value of the property under consideration. The established rule to the contrary was adopted in this state in order to avoid unnecessarily time-consuming procedures in the administration of justice. The established rule is realistic and practical. Condemnation cases ordinarily involve rather protracted trials, and it is not desirable to adopt a new rule which will make them more protracted unless there is some compensating advantage in the change. I find no reason to believe that there will be any such compensating advantage; and in this day and age when every endeavor is being made to expedite the administration of justice, it appears undesirable to adopt a new rule of doubtful value which will tend to defeat that endeavor. It may be conceded that, as an abstract proposition, a plausible argument may be made, and has been made by some text writers, for the rule which the majority would adopt; but all the text writers, regardless of their views, apparently agree that the adoption of such rule would inevitably result in the prolongation of trials in condemnation cases.

At present, the direct examination of an expert is ordinarily not unduly prolonged. He usually bases his opinion on his claimed general knowledge of sales of similar property if there have been such sales. The field of permissible cross-examination of the expert is very broad. He may be examined on such cross-examination concerning the details of all sales upon which he may have based his opinion. The actual cross-examination, however, is often carefully limited by the cross-examiner. He is sometimes content to obtain an answer to the single question of the amount which the expert is receiving for his expert testimony. Again, he may only be interested in showing that the expert has failed to consider certain prior

sales which the cross-examiner deems similar. In other cases, he may be content with an endeavor to show that some sales upon which the expert relied were sales of dissimilar property or were sales made under dissimilar circumstances. Thus there is little time lost on the direct and cross-examination of many experts.

Under the changed rule, the expert would not only be permitted, but would be practically required, to go into detailed facts upon direct examination concerning every sale which he had considered in forming his opinion. If he should fail to do so, he might find that the court would sustain objections later upon the ground that the questions should have been asked on direct and therefore would not constitute proper redirect examination. This would have the tendency to bring into the case on direct examination numerous collateral issues, thus necessarily making the direct examination of every expert unduly prolonged. It therefore appears that there is sound reason for sustaining the established rule. It is unnecessary to labor this point as it is sufficiently explored in the prior opinions of this court and of other courts. (*People* v. *La Macchia, supra,* 41 Cal.2d 738; *Heimann* v. *City of Los Angeles,* 30 Cal.2d 746 [185 P.2d 597]; *City of Los Angeles* v. *Cole, supra,* 28 Cal.2d 509; *City of Los Angeles* v. *Hughes,* 202 Cal. 731 [262 P. 737]; *City of San Luis Obispo* v. *Brizzolara,* 100 Cal. 434 [34 P. 1083]; *Spring Valley Water Works* v. *Drinkhouse,* 92 Cal. 528 [28 P. 681]; *Central Pac. R. R. Co.* v. *Pearson, supra,* 35 Cal. 247; *City of Los Angeles* v. *Frew,* 139 Cal.App.2d 859 [294 P.2d 1073]; *People* v. *Union Machine Co.,* 133 Cal.App.2d 167 [284 P.2d 72]; *Atchison etc. Ry. Co.* v. *Southern Pac. Co.,* 13 Cal.App.2d 505 [57 P.2d 575]; *City of Los Angeles* v. *Deacon,* 119 Cal.App. 491 [7 P.2d 378]; *Los Angeles Gas & Elec. Corp.* v. *Etienne,* 83 Cal.App. 645 [257 P. 123]; *Reclamation Dist. No. 730* v. *Inglin,* 31 Cal.App. 495 [160 P. 1098].) For the reasons stated in these numerous authorities, I would adhere to the established rules.

Returning now to the only questions involved on this appeal, I am of the view that the trial court committed no error in the challenged rulings; and that the majority's reversal is regrettably based solely upon the failure of the trial court to give certain requested instructions, when I feel certain that no member of this court believes that said instructions should have been given. It is for these reasons that I take exception

to the judicial technique employed by my associates who have signed the majority opinion.

I would affirm the judgment.

Shenk, J., concurred.

GIBSON, C. J.—I dissent.

The instructions requested by defendants are materially different from those given in *City of Los Angeles* v. *Cole,* 28 Cal.2d 509 [170 P.2d 928]. In that case we approved instructions to the effect that the price paid by *plaintiff condemner* for other property is not a proper basis for determining the market value of the property sought to be condemned for the reason that such sales are not a fair test of just compensation. The instructions refused here state that the price paid by any public corporation *having the right or power of condemnation* is not a proper basis for the determination of market value. It is obvious that the requested instructions would broaden the rule so as to preclude evidence of other sales to a public body even though the transaction was in fact free of any compulsive elements. The majority opinion is therefore incorrect in stating that the requested instructions are "almost identical" with those approved in *City of Los Angeles* v. *Cole, supra.* I believe that the requested instructions erroneously state the law applicable to the facts of this case and that the court properly refused to give them. In this connection it should be noted, as pointed out by Justice Spence in his dissent, that the majority overrules *City of Los Angeles* v. *Cole, supra,* the authority relied upon to reverse the judgment, and holds that evidence of other sales to a condemner is admissible. The majority also overrules a long line of cases and announces a new rule holding that evidence of the prices paid for similar property in the vicinity is admissible on *direct* examination, although in the present case no such evidence was offered on direct examination, and the parties concede that the question was not raised at the trial. I would affirm the judgment.

Respondent's petition for a rehearing was denied July 16, 1957. Gibson, C. J., Shenk, J., and Spence, J., were of the opinion that the petition should be granted.