[No. B174248. Second Dist., Div. Three. May 5, 2005.]

ROCHELLE BERGMAN, Plaintiff and Appellant, v.
JOEL DRUM, Defendant and Respondent.

COUNSEL

Murawski & Grey, Roberta L. Murawski and David M. Grey for Plaintiff and Appellant.

Joel Drum, in pro. per., for Defendant and Respondent.

Milam & Larsen and Paul A. Larsen for California Casualty Insurance Company as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

**CROSKEY, Acting P. J.**—In this suit for malicious prosecution, plaintiff Rochelle Bergman appeals from a summary judgment granted to defendant Joel Drum (Drum). Plaintiff contends that the trial court's granting of Drum's

motion for summary judgment is inconsistent with our ruling in a previous appeal in this case and thus violates the doctrine of law of the case.

In our previous opinion[1], we ruled that the trial court had properly denied Drum's Code of Civil Procedure section 425.16 "anti-SLAPP" motion to strike plaintiff's complaint. We ruled that, as a matter of law, the evidence presented by the parties in connection with that motion demonstrated that plaintiff had made out a prima facie case against Drum for malicious prosecution of a prior suit in which he had represented an insurance company in his capacity as an attorney. Specifically, we held that there was evidence "from which a trier of fact could find in [plaintiff's] favor on all three elements" of a cause of action for malicious prosecution, including that (1) the prior lawsuit against plaintiff, filed by Drum on behalf of his insurance company client, had been terminated favorably to plaintiff, (2) the prior suit against plaintiff had been brought or maintained without probable cause,[2] and (3) it had been brought or maintained with malice. Citing *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303], we also observed that the applicable standard for determining the merits of a plaintiff's opposition to a section 425.16 motion to strike (namely whether the evidence presented by the parties demonstrates sufficient facts to establish that the plaintiff has a prima facie case against the defendant), "is similar to that applied to determine whether motions for nonsuit, directed verdict, or *summary judgment* should be granted." In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851 [107 Cal.Rptr.2d 841, 24 P.3d 493], a summary judgment case, our Supreme Court held that "[a] prima facie showing is one that is sufficient to support the position of the party in question. [Citation.] No more is called for."

Here, plaintiff asserts that there is no substantial difference between the evidence presented by the parties in connection with Drum's motion for summary judgment and the evidence presented in support of his previous motion to strike the complaint. Plaintiff contends, therefore, that since our application of the prima facie case standard has already established that she has a prima facie case for malicious prosecution, and since our previous ruling is law of the case on that issue, it is an inescapable conclusion that the

---

[1] (*Bergman v. Drum* (Mar. 6, 2003, B159472) [nonpub. opn.]) (hereafter, *Bergman I*).

[2] Probable cause is a question of law. The court makes an objective determination of the reasonableness of the defendant's conduct in instituting or continuing to prosecute a suit. Based on the facts known to the defendant at the time the suit was filed, or which later became known to the defendant, the court determines whether any reasonable attorney would have thought the claim tenable. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 971 [12 Cal.Rptr.3d 54, 87 P.3d 802]; *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 874 et seq. [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon Appel*).) However, "it is sometimes necessary to submit preliminary factual questions to the jury when there is a dispute as to facts which the defendant knew when he instituted the prior action." (*Sheldon Appel*, at p. 884.)

trial court necessarily erred when it granted Drum's motion for summary judgment.[3]

We find no fault with plaintiff's argument. Further, we reject Drum's assertion that the default judgment, temporarily entered against plaintiff in the underlying action, requires us to find, as a matter of law, that he had probable cause to bring and prosecute that action against plaintiff; the authorities on which he relies do not support his position. In addition, we conclude that *Zamos v. Stroud, supra,* 32 Cal.4th 958 (*Zamos*) is applicable to this case. We will therefore reverse the summary judgment and remand this case for further proceedings.

## *FACTUAL AND PROCEDURAL BACKGROUND*

We recite here the facts relevant to this appeal as set forth in *Bergman I.* On February 1, 1996, plaintiff's daughter, Michel, had an accident while driving an uninsured vehicle (the Volvo). According to the police report made at the time, it was a hit-and-run accident because the driver of the Volvo (described by a witness as a White woman with dark hair) had left the scene. The Volvo, however, was left behind, and the police officer who responded to the accident had it towed. Although the Volvo's driver was unavailable, the police report noted that the car's owner was Michel. The source of this information is not clear, but it could be reasonably inferred that the police officer called in the Volvo's license plate number to the Department of Motor Vehicles (DMV), and was given Michel's name as the Volvo's owner *as of the date of the accident.*

According to plaintiff, after the accident, Michel had trouble getting insurance, so, on February 28, 1996, plaintiff registered the car in *her* name, and insured the car herself. On August 28, 1996, after Michel was able to obtain insurance, she registered the car in her name.

The other party to the February 1, 1996 accident was insured by California Casualty Insurance Company (CCIC). After paying some $10,000 for its insured's damages, CCIC retained Drum to file a complaint for subrogation. On April 1, 1997, Drum filed such a complaint against Michel and Does. On July 14, 1997, Michel's default was entered. Seven months later, on February 17, 1998, Drum filed an amendment to the complaint naming plaintiff as Doe 1.

---

[3] The doctrine of law of the case may be applicable where the prior appeal is from a decision short of a full trial, such as a judgment on demurrer or an order of nonsuit, or in this case, an order denying a anti-SLAPP motion to strike a complaint. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 909, p. 944.)

On June 30, 1998, Drum sent plaintiff a letter regarding the lawsuit. Plaintiff responded that she was not the registered owner of the car, and Drum asked for proof. A copy of relevant DMV records was sent to him. In addition, on August 7, 1998, plaintiff also sent Drum a DMV printout showing that she had not been the registered owner of the car at the time of the accident. She then called him to make sure he had received this information. Drum told her he was going to look into the matter and get back to her. Unfortunately, he never did so and, instead, entered her default.

On December 18, 1998, Drum requested entry of a default judgment against both plaintiff and Michel. On January 2, 1999, he sent plaintiff a letter telling her that a judgment had been entered against her. Plaintiff immediately called Drum, who excused himself by saying he could not figure out who the owner of the car was from the DMV records. So, on February 10, 1999, plaintiff sent Drum additional DMV records, also showing she had not been the owner of the registered car on the day of the accident, and asked him to remove the judgment against her. Drum did not do so.

On October 26, 1999, plaintiff, who had retained counsel, made a motion to set aside the judgment against her, and for sanctions, on the ground of extrinsic fraud and mistake. This motion was granted on December 2, 1999,[4] and she was relieved from default. Drum appealed from the order setting aside the default.

At this point, plaintiff decided to contact CCIC. Her daughter, Tamara, called CCIC and explained the problem to a CCIC employee. CCIC then began investigating the matter, and called Drum, who said he did not want to let "the mother off the hook yet." And, in fact, he increased his efforts to collect the judgment by trying to persuade plaintiff to pay him the nuisance value of the case.

Meanwhile, CCIC's investigation had caused it to decide it was not in *its* "best interests" for Drum to pursue plaintiff. Accordingly, CCIC instructed him to remove her from the case. Drum abandoned his appeal of the order setting aside the default—*but did not dismiss plaintiff as a defendant*. On September 20, 2000, CCIC's general counsel instructed Drum, in writing, to dismiss plaintiff with prejudice immediately, because it did not appear that there was a valid factual or legal basis for suing her. On September 27, 2000, Drum dismissed plaintiff with prejudice, but complained to CCIC in a letter dated September 22, 2000, that "once more, California Casualty has decided

---

[4] Plaintiff's request for sanctions, however, was apparently denied. Indeed, as a condition of its order granting her motion to vacate, plaintiff was ordered to pay $450 to Drum and $150 to the court.

it is more important that the defendant be relieved of their [*sic*] legally-enforceable financial obligations than for me to obtain any compensation for my efforts."

Thereafter, plaintiff sued Drum for malicious prosecution. Drum responded by moving to strike her complaint pursuant to Code of Civil Procedure, section 425.16.[5] Drum asserted that he reasonably believed that plaintiff had been the owner of the car on the day of the accident. He argued that, based on his 14 years of experience doing subrogation cases, he was familiar with the fact that unregistered owners of cars often simply wait to register as a car's owner *after* an accident, so as to attempt to avoid liability. He explained that because the DMV records showed Patrick Gros of Ojai[6] as the *registered* owner prior to accident, and showed plaintiff as the *registered* owner *after* the accident, it only made sense that plaintiff, who had the same last name as Michel, must have given Michel permission to drive the car on the day of the accident and therefore must have been the owner.

Plaintiff opposed Drum's section 425.16 motion, and the trial court denied it. Such ruling is appealable (§ 425.16, subd. (j)) and Drum noticed an appeal. In *Bergman I,* we affirmed the trial court's ruling. After we issued our remittitur, Drum moved for summary judgment, relying upon the same factual circumstances and arguments that he had submitted in support of his section 425.16 motion. The trial court granted that motion on January 29, 2004, and plaintiff filed a timely appeal.

## *CONTENTIONS OF THE PARTIES*

Plaintiff contends that our ruling in *Bergman I* settled the procedural question as to whether she had presented a prima facie case and, *on that point*, is the law of the case. She had produced sufficient evidence to demonstrate the existence of triable issues of fact on the questions of (1) the absence of probable cause and (2) the presence of malice.[7] Moreover, even if Drum had probable cause to *initiate* the underlying action, he had no such cause to *continue* its prosecution after all of the facts were made known to him. (For this alternative argument, plaintiff relies on *Zamos, supra,* 32 Cal.4th 958, which was decided after *Bergman I.*) Thus, Drum's motion for summary judgment should have been denied.

---

[5] Code of Civil Procedure section 425.16 is also known as the anti-SLAPP statute. SLAPP stands for strategic litigation against public participation, and the section was designed to allow for the prompt dismissal of litigation designed to silence citizens' participation in matters involving the First Amendment right to participate in matters of public concern. All further statutory references are to the Code of Civil Procedure, except as otherwise noted.

[6] Unbeknownst to Drum, Gros was Michel's ex-husband.

[7] There is no dispute that the underlying action was terminated in plaintiff's favor.

Drum argues that the doctrine of the law of the case should not be applied here because (1) the record demonstrated that probable cause existed and, in any event, section 425.16, subdivision (b) precludes use of the ruling in *Bergman I* in this case. He further argues that the entry of a default judgment against plaintiff in the underlying action conclusively established the existence of probable cause, and that there is no evidentiary basis for plaintiff's claim that Drum acted with malice. Finally, he disputes plaintiff's alternative argument that under *Zamos* he can be held liable for continuing to prosecute the underlying action even if he did have probable cause to *initiate* it. He contends that *Zamos* should not be retroactively applied.

## *DISCUSSION*

1. *Impact of* Bergman I

    a. *The Doctrine of Law of the Case Is Applicable to Drum's Motion for Summary Judgment*

■ The standard for determining the merits of a defendant's anti-SLAPP motion to strike a complaint is similar to that for determining the merits of a defendant's motion for summary judgment. Both seek to determine whether a prima facie case has been presented by the plaintiff in opposing the motions. Thus, it was error for the trial court to grant Drum's motion for summary judgment since we already determined in *Bergman I* that plaintiff presented a prima facie case in support of her suit for malicious prosecution, including meeting all three elements of that cause of action. This appellate conclusion established that the evidence presented by the parties in connection with the motion to strike the complaint was sufficient to raise a triable issue of material fact. This determination is sufficient to defeat a subsequent motion for summary judgment unless the defendant submits to the trial court, in support of such motion, additional or different evidence that would, as a matter of law, *conclusively* negate plaintiff's prima facie case. In the instant case, no such evidence was presented by Drum.

Seeking to avoid this result, Drum argues that the evidence of who owned the car at the time of the accident is still "ambiguous at best" and he "engaged in no misconduct for being suspicious as a result of [plaintiff's] daughter's lies to the police." We cannot agree that having *ambiguous* evidence as to ownership and being suspicious of plaintiff's *daughter* are sufficient to *conclusively* establish the existence of probable cause to sue *plaintiff*. Nor do we understand the implied assertion he makes that plaintiff had a duty to conduct *his* factual investigation for him by giving him a scenario of the history of the ownership of the car so that he and his insurer-client would not have to ferret out the facts for themselves before deciding whom to sue. His appellate brief demonstrates many unasked

questions on his and his client's part prior to their suing plaintiff.[8] Drum's mere *suspicion* that plaintiff *might* be the owner at the time of the accident was not enough to bring her into this suit, particularly where he had readily available to him DMV records indicating to the contrary. Drum's assertion that because the driver of the car (plaintiff's daughter Michel) and the plaintiff have the same last name, "it was reasonable to conclude the latter was probably the actual owner of the vehicle at the time of the accident" is not persuasive. (As noted in fn. 2, *ante*, probable cause to sue is a question of law.)

It is true that in her response to Drum's separate statement, plaintiff did not dispute his assertion that he had specific reasons for suing her as the owner of the car. Those reasons were: "her failure to respond to [a letter from his insurer-client to plaintiff wherein the insurer claimed that plaintiff was 'responsible for this accident'[;] the discrepancy [between] the DMV records [indicating Patrick Gros was the registered owner of the car] and the police report [indicating Michel owned the car;] the fact that Gros lived in an entirely different county than Michel[;] and [Drum's] experience that transferees of automobiles often delay transferring registration after an accident to avoid Vehicle Code Liability." However, Drum's *asserted* basis for suing plaintiff is not the question; the probable cause question in a malicious prosecution suit is whether any reasonable attorney would have thought the suit against plaintiff tenable, based on the facts known to the defendant. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817 [123 Cal.Rptr.2d 19, 50 P.3d 733] (*Wilson*); *Zamos, supra*, 32 Cal.4th at p. 971.)[9] That is a question of law for the court, not the jury (*ibid.*), and, in *Bergman I*, we decided that matter in favor of plaintiff when, after reciting the facts of the case as presented by the parties at that time, we concluded, for purposes of the anti-SLAPP motion to strike, that Drum "in fact, had *no* evidence from which he *reasonably* could have inferred that [plaintiff] owned the car on the day of the accident. Instead, his conclusion to the contrary was no more than speculation."

---

[8] For example, it is unclear whether Drum ever attempted to obtain any records from DMV prior to naming and serving Bergman as a Doe in February 1998.

[9] Drum argues that *Zamos, supra*, 32 Cal.4th 958 does not apply to this case because it was decided after we rendered our opinion in *Bergman I*. His focus is on the holding in *Zamos* that attorneys who *continue* to prosecute a case without probable cause can be liable for malicious prosecution even though they initially had probable cause to file the suit. Whether *Zamos* should be given retroactive application to pending cases is a question we address in a subsequent portion of this opinion.

### b. *Application of the Doctrine of Law of the Case Does Not Affect Drum's Client, CCIC*

Plaintiff sued both Drum and CCIC, the insurer that Drum had represented in the underlying action, for malicious prosecution. CCIC has filed an amicus curiae brief in which it correctly observes that because it was not a party to the prior appeal in this case, the doctrine of law of the case is not applicable to it. (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57 [192 Cal.Rptr. 857, 665 P.2d 947].) CCIC argues that the upshot of this is that Drum will be "saddled with erroneous rules of law that will not apply to [CCIC] in the same trial [and i]t will be extremely difficult for the trial court to separate out for itself and for the jury which rules of law apply to [Drum and] there will likely be inconsistent judgments because contradictory rules of law will be applied to each defendant [and] in any case, confusion will almost certainly result, needlessly prolonging this action." Thus, concludes CCIC, the doctrine of law of the case should not be followed with respect to Drum.

While it is true that the doctrine of law of the case should not be applied if such application would result "in a manifestly unjust decision" (*England v. Hospital of Good Samaritan* (1939) 14 Cal.2d 791, 795 [97 P.2d 813]), we do not agree with CCIC's dire predictions regarding its application to this case. There was no erroneous rule of law. Moreover, the only thing decided by *Bergman I* was the pretrial procedural determination that plaintiff had presented a prima facie case on her cause of action against Drum for malicious prosecution. It did not in any way relieve plaintiff from the ultimate burden of proving her case at trial by a preponderance of the evidence.

### c. *Application of the Doctrine of Law of the Case Is Not Precluded by Section 425.16*

■ Subdivision (b)(3) of section 425.16 states: "If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible *in evidence* at any later stage of the case, and no burden of proof or degree of proof otherwise applicable shall be affected by the determination." (Italics added.) The obvious intent of this subdivision of section 425.16 is that a decision by a court that a plaintiff has presented a prima facie case in response to a defendant's section 425.16 motion to strike should not be used as proof that a verdict *in the plaintiff's favor* should be rendered in a later dispositive or potentially dispositive portion of the case, such as at trial or a motion by the plaintiff for summary judgment.

This provision in section 425.16 does not preclude application of the doctrine of law of the case here because, in the section 425.16 motion, the *only* thing established was the procedural conclusion that plaintiff had presented a *prima facie case* which entitled her to go forward. In the absence of Drum's presentation of additional or different factual or legal matter, he is not entitled to reargue the proposition that plaintiff has not presented sufficient evidence to go before a trier of fact. Clearly, our determination in *Bergman I* will have no impact on the trial of this matter where plaintiff will have to prove her case for malicious prosecution by a preponderance of the evidence. Upon the commencement of the trial, the impact of the law of the case doctrine will simply disappear.

2. *The Entry of a Default Judgment Against Plaintiff in the Underlying Action Does Not Compel the Conclusion That There Was Probable Cause for the Action Against Plaintiff*

Drum and CCIC also argue that the doctrine of law of the case is not applicable here because *Bergman I* did not discuss the question whether the default judgment against plaintiff in the underlying action had established, as a matter of law, that Drum did have probable cause to sue plaintiff in that case. While it is true that we did not previously address that question, we do so now and we hold that the granting of a default judgment does not have a conclusive impact on the issue of probable cause to sue plaintiff as urged by Drum and CCIC.

█ It is the law in California that a plaintiff's victory at trial (unless it is obtained by means of fraud or perjury) will act as conclusive proof that there was probable cause for the plaintiff to file the suit, and will thus preclude a cause of action by the defendant for malicious prosecution, even if the victory is reversed by a trial court (such as by entry of a judgment notwithstanding the verdict) or an appellate court. (*Wilson, supra,* 28 Cal.4th at p. 817 et seq.; *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 383 [90 Cal.Rptr.2d 408] (*Roberts*); *Cowles v. Carter* (1981) 115 Cal.App.3d 350, 353 et seq. [171 Cal.Rptr. 269].) "The rationale is that approval by the trier of fact, *after a full adversary hearing,* sufficiently demonstrates that an action was legally tenable[;] success at trial shows that the suit was not among the least meritorious of meritless suits, those which are totally meritless and thus lack probable cause." (*Roberts,* at p. 383, italics added.)

█ This conclusive presumption based on a plaintiff's victory in the trial court in an underlying action is not limited to a judgment in the plaintiff's favor following a trial in that action. Thus, where an interim determination in

the underlying action has the effect of demonstrating that a suit is not totally and completely without merit, it will have the effect of establishing probable cause to bring the suit. (*Wilson, supra*, 28 Cal.4th at p. 815 [trial court's denial in underlying suit of an anti-SLAPP special motion to strike will establish existence of probable cause to bring that suit when such denial is predicated on a finding that the suit had potential merit]; *Roberts, supra*, 76 Cal.App.4th at p. 384 [trial court's denial of a defendant's motion for summary judgment in underlying suit normally establishes there was probable cause to file the suit, but not, for example, when the motion was denied on the basis of materially false facts submitted in opposition to the motion].)

Those cases, however, are not applicable to the instant case where, in the underlying action, Drum prevailed in a default judgment prove-up. Such a victory does not equate with the success achieved by the plaintiffs in the cited cases because, in deciding whether to grant Drum's insurer client a default judgment, the trial court did not have the benefit of a presentation by *both sides* on the merits of the underlying action. It did not have the "full adversary hearing" of which the *Roberts* court spoke. (*Roberts, supra*, 76 Cal.App.4th at p. 383.) It is the very fact that the trial court reviews the presentations of both sides in interim rulings that justifies the recognition of a conclusive effect on the issue of probable cause. (*Wilson, supra*, 28 Cal.4th at p. 821; *Roberts,* at p. 383.)

Drum points to *Fleishman v. Superior Court* (2002) 102 Cal.App.4th 350 [125 Cal.Rptr.2d 383], contending that it refutes this reasoning. In that case, the court held that the issuance of a preliminary injunction in the underlying action conclusively established that such suit was brought with probable cause. The court stated that it was "inconsequential whether the trial court [in the underlying action] committed procedural error at the hearing on the preliminary injunction" when it precluded the defendant in that underlying case from presenting evidence at the hearing on the injunction on the grounds that the defendant " 'had not filed a responsive pleading or opposition within the specified time period.' " (*Id.*, at pp. 357, 356.) The *Fleishman* court justified its position by saying that "[t]he trial court credited the verified complaint and a declaration by an officer of [the plaintiff in the underlying action] that substantiated legally cognizable claims. Pursuant to our Supreme Court's reasoning in *Wilson*, this prima facie showing was *alone* sufficient to establish probable cause irrespective of whether [the defendant in the underlying suit] was erroneously precluded from presenting evidence to the contrary." (*Id.*, at p. 357.) In relying on *Fleishman*, however, Drum overlooks the fact that, in that case, the defendant actually had the opportunity to contest the preliminary injunction, whereas at a default prove-up the defendant

is necessarily absent and thus there is no potential for a "full adversary hearing."

*Holliday v. Holliday* (1898) 123 Cal. 26 [55 P. 703], also relied upon by Drum, is similarly distinguished. *Holliday* involved a statutory scheme in the Penal Code (§ 701 et seq.), for requiring a person accused of threatening to commit an offense against the person or property of another to post security as a means of keeping the peace if a magistrate determines there is good reason to fear the commission of the offense. The accused person may controvert the allegations against him or her and, in such case, the magistrate is required to take testimony on the charges. (Pen. Code, § 704.) Thus, these Penal Code provisions provide the accused with the opportunity of an adversary hearing, something which is not available to a defendant in a civil case default prove-up.

### 3. Zamos *Should Be Retroactively Applied*

Drum contends that the issue of the existence of probable cause should be determined as of the date when he initiated the underlying action against plaintiff by serving her as Doe No. 1. In his view, it is irrelevant that he may have, at some later point in time, discovered that there was a lack of probable cause to *continue* the prosecution of the underlying case. In making this argument, Drum is asserting that the holding in *Zamos* should not be applied in the instant case. We disagree.

In *Zamos*, the court addressed what it called "a question of first impression in th[at] court" (*Zamos, supra,* 32 Cal.4th at p. 966), and in doing so, announced the rule that an attorney who files a suit with probable cause to bring the suit may nevertheless be liable for malicious prosecution if (1) he continues to prosecute the suit after learning it is not in fact supported by probable cause and (2) the other elements of a cause of action for malicious prosecution are established (*id.* at p. 960).

This holding of the *Zamos* court did not overrule some prior decision that the Supreme Court had made on the issue of continuing to prosecute a case known to lack probable cause. Rather, with its holding, the court simply addressed the issue head on, just as the Court of Appeal in *Zamos* had done, and it held that *continued prosecution* of a meritless case is as destructive to the victim of malicious prosecution, and to the administration of justice, as is the *initiation* of a meritless action. (*Zamos, supra,* 32 Cal.4th at p. 969.) The Supreme Court stated that were it to hold that the tort of malicious prosecution does *not* include the act of continuing to prosecute a case after learning

that it lacked probable cause, that holding would "no more [be] supported by the decisions of this court than it is by out-of-state authority" (*id.* at p. 968) and would also be "without support in principle" (*id.* at p. 969). In short, the act of maintaining an action against a plaintiff when it becomes clear that there is no probable cause to continue prosecuting it has never been declared a protected activity in California on which a defendant, in a malicious prosecution action, could justifiably claim to have relied.[10]

■ Moreover, even if the decision in *Zamos* did constitute an overruling of a prior California Supreme Court case, retroactive application of *Zamos* to this case would not be unwarranted. "It is the general rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation and that the effect is not that the former decision was bad law but that it never was the law. [¶] A well-recognized exception to this general rule is that, where a constitutional provision or statute has received a given construction by a court of last resort and contracts have been made or property rights acquired under and in accordance with its decision, such contracts will not be invalidated nor will vested rights acquired under the decision be impaired by a change of construction adopted in a subsequent decision. Under those circumstances it has been the rule to give prospective, and not retrospective, effect to the later decision." (*County of Los Angeles v. Faus* (1957) 48 Cal.2d 672, 680–681 [312 P.2d 680].) Here, that exception would not apply. Moreover, while considerations of fairness and public policy can determine whether to apply a decision retroactively, in the instant case we do not perceive a negative effect on the administration of justice if *Zamos* is so applied. Further, the question of fairness is not implicated in the instant case since Drum effectively states in his appellate brief that he had no reason to rely on any perception he had of the law regarding malicious prosecution

---

[10] We note that in one of its prior opinions, the Supreme Court included the act of *maintaining* a lawsuit in its discussion of the cause of action for abuse of process versus malicious prosecution, although the discussion would arguably not be deemed a holding. In *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169 [232 Cal.Rptr. 567, 728 P.2d 1202], the court stated: "The relevant California authorities establish, however, that while a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for malicious prosecution, the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a basis for an abuse of process action."

A similar issue was discussed in *Lujan v. Gordon* (1977) 70 Cal.App.3d 260, 262 [138 Cal.Rptr. 654], where the court addressed the question "whether an action for malicious prosecution may be maintained against a person who had no part in the commencement of the action, but who participated in it at a later time." The *Lujan* court said that "[t]here does not appear to be any good reason not to impose liability upon a person who inflicts harm by aiding or abetting a malicious prosecution which someone else has instituted. Indeed, the obvious justice of the principle may well explain why appellate courts have so rarely been called upon to discuss it." (*Id.* at p. 264.)

that is different from the holding in *Zamos*. That is, Drum argues in his brief that "the undisputed facts establish [that he] acquired no new information during the course of the lawsuit that would have caused a reasonable attorney to abandon the lawsuit against [plaintiff]."[11]

### 4. *Drum's Offer to Vacate the Default Judgment Does Not Preclude a Factual Finding in Plaintiff's Favor on the Element of Malice*

Regarding the malicious prosecution element of malice, we are not persuaded that Drum's lack of malice is *established* by the fact that he offered to stipulate to vacate the judgment in the underlying action if plaintiff would send him her proposed answer to the complaint in that suit. The reality is that when plaintiff later moved to set aside the default and default judgment entered against her, and submitted her answer with that motion, not only did Drum not stipulate to setting the judgment and her default aside, he filed opposition, on behalf of his insurer-client, to her motion to vacate. Additionally, when her motion was granted, he filed an appeal, again on behalf of his client, from the order granting her motion to vacate.[12] While these circumstances do not conclusively establish malice, they are sufficient to allow the issue to go to the trier of fact for resolution.

---

[11] Regarding the concept of a plaintiff wrongfully *continuing* to prosecute a case, Drum argues that the evidence requires a finding in his favor as a matter of law on the malicious prosecution element of malice. However, the doctrine of law of the case is applicable to that element as well as the element of probable cause, as demonstrated by the recitation of facts in our earlier opinion, not the least of which is that Drum initially refused to dismiss plaintiff from the underlying action even after his insurer client told him there was no basis to keep her in the suit.

Moreover, we reject Drum's contention that, since *he* never agreed that the action against plaintiff had no merit, the element of favorable termination, which we found existed because of his insurer client's dismissal of the underlying action with prejudice, cannot be applied to him. If his contention accurately stated the law, no attorney could be sued for malicious prosecution of his client's case if he simply followed his client's instruction to dismiss the case even though he was the moving force behind the continued prosecution of the case after a reasonable attorney would have seen that such continued prosecution was untenable.

[12] Plaintiff's motion to set aside the default and default judgment was made on grounds of extrinsic fraud and mistake. Drum and CCIC assert it was granted on the ground of extrinsic mistake. The record does not specifically disclose the trial court's reason for setting aside the default judgment. Drum and CCIC observe that in granting plaintiff relief from the default and default judgment, the trial court ordered plaintiff to pay sanctions in the amount of $450 to the insurer and $150 to the court, and they argue this is evidence that the trial court did not find evidence of extrinsic fraud. In light of the fact that the trial court's order granting the motion to vacate is now final, and the possibility that the sanctions were imposed due to the timing of plaintiff's motion, rather than an absence of evidence of extrinsic fraud, we see no purpose in attempting to go behind the order. These arguments amount to a collateral attack asking us to engage in speculation as to the basis for the trial court's order. This we cannot do.

## DISPOSITION

The summary judgment rendered in favor of Drum is reversed and the cause is remanded for further proceedings consistent with the views expressed herein. Costs on appeal to plaintiff.

Kitching, J., and Aldrich, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 17, 2005. Werdegar, J., did not participate therein.